[No. 18226.   Department Two.—March 14, 1894.]

## D. C. MITCHELL, APPELLANT, v. JOHN FINNELL, RESPONDENT.

PROMISSORY NOTE—AGENCY FOR PAYEE—FINDING AGAINST EVIDENCE.— Evidence establishing without conflict that the payee of a note authorized a third person to settle with the maker for sheep claimed to have been stolen from the payee of the note, and to take any thing he could get, proves authority to take a promissory note, and a finding that the note was taken without the authority or direction of the payee is not justified by the evidence.

ID.—FALSE REPRESENTATIONS AND THREATS OF AGENT.—The payee of the note must be held responsible for false representations and threats of criminal prosecution made by the agent taking the note, within the scope of the authority given to him to settle with the maker and get what he could out of him.

ID.—PRINCIPAL, WHEN BOUND BY ACTS OF AGENT.—A principal is bound by acts and representations of an agent within the scope of his authority, even though the agent disobeyed his positive directions.

ID.—RATIFICATION—INDORSEMENT OF NOTE.—The payee must be held to have ratified whatever was done by the agent in procuring the note, by the fact that he indorsed it with the knowledge that it was given in settlement of a supposed claim of the payee against the maker.

ID.—KNOWLEDGE OF WRONGFUL ACTS.—So far as concerns the validity of the note indorsed by the payee, he is chargeable with knowledge of the wrongful acts of his agent, whether he had such knowledge or not.

ID.—PAYMENT OF MONEY TO AGENT.—The indorsement and transfer of the note being the act of the payee, it was immaterial whether the money was paid to the payee or to his agent.

ID.—ENFORCEMENT OF FRAUDULENT NOTE BY BONA FIDE PURCHASER—RE-
COVERY FROM PAYEE.—Where the maker of a note which was procured
by menace and false representations of the agent of the payee is com-
pelled to pay it to a *bona fide* purchaser for value, before maturity,
without notice of the fraud, the payee who indorsed the note to such
purchaser is responsible to the maker for the reimbursement of the
money paid.

ID.—ASSIGNMENT OF CLAIM TO AGENT.—An agreement between the payee
of the note and the agent who procured it, that the agent could have
whatever he could get out of the one who made the note, does not
amount to an assignment of the claim of the payee against the maker,
and such agreement cannot relieve the payee of the note who indorsed
it to enable a bank to collect it, from responsibility to the maker for the
fraud of the agent.

APPEAL from a judgment of the Superior Court of
Tehama County, and from an order denying a new trial.

The facts are stated in the opinion.

*P. H. Coffman*, and *J. T. Matlock*, for Appellant.

Knott was the agent of the defendant, authorized to
act as such by precedent authority. (Civ. Code, secs.
2295–2303, 2308.) Not only was he an agent by prece-
dent authority, but his acts as such were ratified and
adopted by the defendant. Even if his acts were
without authority, their subsequent ratification bound
the defendant from the inception of the transaction.
(Story on Agency, secs. 235, 239; *Taylor* v. *Robinson*, 14
Cal. 396; *McCracken* v. *San Francisco*, 16 Cal. 591; *Clea-
land* v. *Walker*, 11 Ala. 1058; 46 Am. Dec. 238; *Newton*
v. *Bronson*, 13 N. Y. 594; 67 Am. Dec. 89; *Moss* v. *Ros-
sie Mining Co.*, 5 Hill, 137; *Weed* v. *Carpenter*, 4 Wend.
219; *Hoyt* v. *Thompson*, 19 N. Y. 218; Mecham on
Agency, sec. 167; *Zotman* v. *San Francisco*, 20 Cal. 619;
*Negley* v. *Lindsay*, 67 Pa. St. 217; 5 Am. Rep. 427; *Wil-
son* v. *Tumman*, 6 Man. & G. 242; *Morehouse* v. *Northrop*,
33 Conn. 380; 89 Am. Dec. 211; *Griswold* v. *Haven*, 25
N. Y. 595; 82 Am. Dec. 380; Mecham on Agency, sec.
113; *Lee* v. *West*, 47 Ga. 311; *National Life Ins. Co.* v.
*Minch*, 53 N. Y. 144; *Lane* v. *Black*, 21 W. Va. 617;
*Tucker* v. *Jerris*, 75 Me. 184; *James* v. *Emery*, 40 N. H.
348; *Masson* v. *Bovet*, 1 Denio, 69; *The Matteawan Co.* v.

*Bentley,* 13 Barb. 641; *Wheaton* v. *Baker,* 14 Barb. 594.)
Finnell, by indorsing the note acknowledged it to be
his property, and after exercising acts of ownership
over the property with notice of the facts, and after the
rights of the other parties have been prejudiced, and after
his assignee has prosecuted to judgment a suit on the
note, he is estopped from denying that the note was
taken for him; that when he indorsed it he had the
right to do so as his own property; and that he war-
ranted it to be what it on its face purported to be.
·(*Challiss* v. *McCrum,* 22 Kan. 157; 31 Am. Rep. 181;
*Hannum* v. *Richardson,* 48 Vt. 508; 21 Am. Rep. 152;
*Delaware Bank* v. *Jarvis,* 20 N. Y. 226; *Young* v. *Cole,* 3·
Bing. N. C. 724; *Snyde* v. *Reno,* 38 Iowa, 329; *Thrall* v.
*Newell,* 19 Vt. 202; 47 Am. Dec. 682; *Lobdell* v. *Baker,* 3
Met. 469; *Gompertz* v. *Bartlett,* 24 Eng. L. & Eq. 156;
*Ticonic Bank* v. *Smiley,* 27 Me. 225.)    In order for Fin-
nell to free himself of any responsibility of the acts of
Knott, he should have repudiated those acts immedi-
ately upon being notified of them, instead of doing any
positive act that would in any way give apparent valid-
ity to those acts, or exercise any act of ownership over
the property acquired in his name by the acts of Knott.
(*Pitts* v. *Shubert,* 11 La. 286; 30 Am. Dec. 718; *Lee's·
Admr.* v. *Fontaine,* 10 Ala. 755; 44 Am. Dec. 505.)    In
the case at bar Finnell attempted to show that he rati-
fied the acts of Knott for the accommodation of the bank.
This is no defense against Mitchell, and can avail him
nothing.    If one ratifies the acts of his agent for one
purpose he must be conclusively presumed to have rati-
fied them for all purposes.    (Mecham on Agency, sec.
130.)    Knott having authority from Finnell, either by
previous authorization or subsequent ratification, to·
make a settlement with Finnell and to take the note,
Finnell would be responsible for all the acts of Knott
while Knott was acting within the apparent scope of his
authority.    (*Wolfe* v. *Pugh,* 101 Ind. 293, 304; *Rhoda* v.
*Annis,* 75 Me. 17; *Tagg* v. *Tennessee Nat. Bank,* 9 Heisk.
479; *Eilenberger* v. *Protective Mut. Fire Ins. Co.,* 89 Pa.

St. 464; *Reynolds* v. *Witte*, 13 S. C. 5; 36 Am. Rep. 678; *Locke* v. *Stearns*, 1 Met. 560; 35 Am. Dec. 382; *White* v. *Sawyer*, 16 Gray, 586; *Howe* v. *Newmarch*, 12 Allen, 49; *Pratt* v. *Bunker*, 45 Me. 569; *Stickney* v. *Munroe*, 44 Me. 195; *Lynch* v. *Mercantile Trust Co.*, 18 Fed. Rep. 486; *Jewett* v. *Carter*, 132 Mass. 335; *Kibbe* v. *Hamilton Ins. Co.*, 11 Gray, 163; *Bank of California* v. *Western Union Tel. Co.*, 52 Cal. 280; *Banks* v. *Everest*, 35 Kan. 687; *Griggs* v. *Selden*, 58 Vt. 561.)

*W. P. Johnson*, and *G. H. Chase*, for Respondent.

Even conceding that Knott was empowered to effect a settlement for the sheep, he was not authorized to procure a note in payment for the stolen sheep. (Mecham on Agency, secs. 32, 740, 741; *Turner* v. *North Beach etc. R. R. Co.*, 34 Cal. 594–99; *Kline* v. *Central Pac. R. R. Co.*, 37 Cal. 400–08; *Mendelsohn* v. *A. L. Co.*, 40 Cal. 657.) There was no subsequent ratification of Knott's wrongful act. Finnell's indorsement of the note was not a ratification of Knott's act. The principal must have a knowledge of all the facts before he can be held to have ratified the unauthorized act. (*Dean* v. *Bassett*, 57 Cal. 640; *Billing* v. *Morrow*, 7 Cal. 172. See, also, *Dupont* v. *Wertheman*, 10 Cal. 354; *Miller* v. *Board of Education*, 44 Cal. 166; Mecham on Agency, secs. 113, 128, 129, 148, 149, 167; 1 Am. & Eng. Ency. of Law, 432, 433, and notes 437, 438; *Tucker* v. *Jervis*, 75 Me. 184; *Taliaferro* v. *Baltimore etc. Co.*, 71 Md. 200; *Manning* v. *Leland*, 153 Mass. 510.) Even if Finnell had received some of the proceeds of the note, there would have been no ratification unless made with knowledge of the facts. (Civ. Code, sec. 2310.) Under the code Knott's act was incapable of ratification. A ratification is not valid unless at the time of ratifying the principal has power to confer authority for such an act. (Civ. Code, sec. 2312. See Mecham on Agency, secs. 114–16.) The act of Finnell in indorsing the note did not in any way prejudice or injure the plaintiff, as the bank was not an indorsee in due course. (See Civ. Code,

secs. 3123, 3124; Daniel on Negotiable Instruments, sec. 741.)

TEMPLE, C.—The complaint in this action charges that August 13, 1890, plaintiff executed to defendant his promissory note for four hundred and sixty dollars, payable to defendant's order two months after date.

That plaintiff received no consideration for the note, but was induced to execute it by threats of unlawful confinement and criminal prosecution and injury to his character, which threats were made by one W. S. Knott, acting for said defendant; also by false representations made by defendant's agent.

That defendant, about September 1, 1890, transferred the note to the bank of Tehama county to secure the sum of two hundred and fifty dollars, with interest.

That subsequently plaintiff was compelled by a judgment rendered against him in favor of said bank, to pay said note with interest and costs, which, with an attorney's fee paid by him, amounted to four hundred and two dollars and ninety-five cents, which sum has not been repaid.

The answer consists of denials. The court found that the note was executed without consideration, and was procured by threats of criminal prosecution, and of arrest, and through plaintiff's fear of the same, and through threats of unlawful confinement and injury to the character of plaintiff.

The court, however, finds that the threats were made by Knott, who, in making them, was not acting for the defendant or by his authority. That the note was executed and delivered to Knott, that defendant had no interest in it, and it was not executed by his authority or direction.

That defendant did not, on or about September 1st, or at any other time, transfer the note to the bank of Tehama to secure the sum of two hundred and fifty dollars, or any other sum, but that said Knott borrowed from the bank two hundred and fifty dollars, and left the note

there as collateral security. That at the time the note
had not been indorsed by defendant and was not in-
dorsed by him until after it had become due. That de-
fendant never received any thing for said note, but
indorsed it at the request of the cashier of the bank,
solely for the accommodation of the bank.

A motion for a new trial was made by plaintiff, and
on the motion plaintiff attacked as not supported by the
evidence the findings, that:

1. The note was not taken by the authority or under
the direction of defendant.

2. That the threats were not made by Knott while
acting for defendant; and,

3. That the note was not indorsed by defendant to
the bank to secure the sum of two hundred and fifty
dollars and interest, and that the defendant received
nothing upon the note.

As to the authority of Knott to act for Finnell, Knott
testified :

" I understood that the note was given in payment
for John Finnell's sheep. The sheep that were supposed
to have been stolen from Mr. Finnell. . . . .

" Q. Did Mr. Finnell authorize you or tell you to take
a note from Mr. Mitchell in payment for sheep, or for
any purpose whatever? A. None at all. Told me to
take nothing—never told me to take note or any thing
else ; but told me to make some kind of a settlement
with him. Mr. Finnell and I had a talk the morning
before he started for Napa. I told him I was going to
see Mitchell and see what I could do with him. He
said all right. ' Go on and do the best you can with
him. . . . . I don't want a cent. Whatever you make
you shall have.' I told Finnell I was going to see Mitch-
ell about the sheep that were stolen—Finnell's sheep.
I expected Mitchell to settle or pay for the sheep, because
they were stolen from Finnell. . . . . Q. Did he tell you
to have Mitchell arrested, or to make any threats of that
kind? A. No, sir. Nothing was said at all by Mr.
Finnell in regard to prosecuting Mitchell criminally—

to do just what I thought best; I had it all in my own hands to settle it. . . . . Q. Did Finnell tell you that Mitchell had stolen his sheep? A. Not of his own personal knowledge. I was a witness in the trial between Mitchell and the bank of Tehama county. I testified in that trial as follows: 'Mr. Finnell came to me one day and told me that Mitchell had stolen his sheep.' That is what I did—from hearsay—yes, sir. Then he went on and told me who the witness was, and how he came by the testimony that led him to believe that he stole them. Finnell did not employ me at all. He directed me to go and make whatever I could out of it— if I got nothing I made nothing."

The witness proceeded to testify that he saw Mitchell Saturday night when Mitchell was in town attending a circus with his wife and children. That he talked with him about settling for the sheep. That he told him, or might have told him, he would be prosecuted if he did not. Did not tell him in so many words that Finnell would prosecute him and send him to states prison if he did not, but took him to one side and agreed to keep it quiet and " I told him there must be something done about this matter." He also told him he had a warrant for his arrest. Tuesday he saw Mitchell again and told him Finnell had gone below and had left the matter with him to settle. Mitchell then gave him the note in question. He had a warrant which he said was handed to him by Judge Stratton, although he had never made a complaint against Mitchell or asked Stratton to write out a complaint.

He also testified that before Finnell left he told him of his first conversation with Mitchell, and before Finnell indorsed the note he had told him of the facts in regard to the taking of the note.

At the time of the trial Knott was dead, his evidence was read from a deposition taken at the instance of the defendant.

Defendant testified that he made no claim against Mitchell for the sheep; he had been told that Mitchell

stole some sheep.  He had lost about five hundred.
Knott spoke to him about it; told him that Eaton said
Mitchell had stolen a lot of sheep, and spoke about see-
ing Mitchell about it.  "I told him so far as I was
concerned, I did not want any thing to do in the
matter.  Whatever you can make out of it, I have no
interest in the matter whatever.  I meant to say I had
no claim legally against him; if he could get any thing
he could have whatever he could get. . . . . Knott
came to me and told me some thing about—he would
see him or was going to see him.  I told him I did not
want any thing to do with it.  Whatever he could get
out of Mitchell he could have.  I had no claim against
Mitchell.  He could do as he pleased."

He further stated that when he was asked to indorse
the note the cashier told him Knott had brought it
there and had drawn two hundred and sixty dollars on
it; that Knott had settled with Mitchell about some
sheep which purported to have been taken from him,
and again, "When I went into the bank Mr. Cahoone
presented me with the note.  I was taken by surprise.
I asked him how he came by the note, and he told me.
When he presented me with the note I understood, and
I got all the information in regard to how the note had
been obtained and all about it.  I refused to sign it.  I
told him, in fact, I had no interest in it; I had never
authorized him to take any sum of money, only what
Mitchell gave him freely and willingly in the way of
settlement.  If he had taken any sheep and wanted to
pay for any sheep he could have whatever there was in
it."

He was then asked by his counsel what he found out,
and he replied, that Mitchell had given a note in pay-
ment of the sheep; that was all he knew about it.

I think this evidence establishes without conflict that
Finnell authorized Knott to settle with Mitchell for the
sheep, and take any thing he could get; this, of course,
includes a promissory note, and the finding that the

note was taken without the authority or direction of defendant is not justified by the evidence.

So far as they affect the validity of the note Finnell must also be held responsible for the representations of Knott. They were, undoubtedly, made within the scope of the authority given to Knott to settle with Mitchell, and get what he could out of him, and that is the test. In such case the principal is bound even though the agent disobeyed his positive directions. (Chitty on Contracts, 866; Story on Agency, sec. 452; Wood's Master and Servant, sec. 284; *Garretzen* v. *Duenckel*, 50 Mo. 104; 11 Am. Rep. 405.)

But, under the facts disclosed, the defendant would be held to have ratified whatever was done by Knott in procuring the note, from the very fact that he indorsed it, with the knowledge that it was given in settlement of a supposed claim that he had against Mitchell. It could only have been so taken by Knott acting for him, and, so far as concerned the validity of the note, he was chargeable with knowledge, whether he had it or not. This would have been conceded by all had Finnell sued upon the note. It was his indorsement that enabled the bank to collect. In the case of the bank against Mitchell it must have been held that Finnell's indorsement was a ratification of the act of Knott as the agent of Finnell, in his attempt to transfer it. If this were so the transfer was still the act of Finnell, and it does not matter in this case whether the money was paid to Finnell or to Knott, his agent.

I think the evidence shows that when Finnell indorsed the note he had full knowledge of the practices through which it was procured; but I think even without that he took the note subject to all its infirmities.

It was error, therefore, to hold that Finnell did not transfer the note as security, or that he received nothing for such transfer.

The respondent contends that Mitchell should have made his defense in the suit on the note brought by the bank. The record shows that he did, and, although in

that case it was found, as in this, that the note was procured by menace and misrepresentations, it was also found that the assignment was made before the note was due, and that the bank took it for a valuable consideration without notice.   The defendant indorsed the note for the express purpose of enabling the bank to collect from Mitchell money which the bank had loaned to Knott.   He cannot now complain that Mitchell paid this loan when he might have defended a suit brought to collect it.   He is responsible for the money as much as he would be had it been paid to him.

Respondent also contends that the transaction between Finnell and Knott amounted to an assignment of Finnell's claim to Knott.   I do not think it was an assignment, but if it could be so held, it will not help Finnell. Mitchell was not informed of any assignment, and Knott settled with Mitchell, acting for Finnell, who, with the knowledge of that fact, ratified it by indorsing the note to enable the bank to collect it.   Knott could only have availed himself of such an assignment by acting as the agent of Finnell.

I think the judgment and order should be reversed and a new trial had.

SEARLS, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed and a new trial granted.
         McFARLAND, J., DE HAVEN, J., FITZGERALD, J.

Hearing in Bank denied.