### FRITZ et al. v. MOUAKAD.

(Supreme Court, Appellate Division, First Department. December 30, 1909.)

1. GUARANTY (§ 91*)—EXTENSION OF TIME—RELEASE OF GUARANTOR.

In an action on a guaranty of the payment of the accounts of a firm, evidence *held* not to show that defendant consented to plaintiffs' acceptance of notes from the debtor for accounts then due.

[Ed. Note.—For other cases, see Guaranty, Dec. Dig. § 91.*]

2. GUARANTY (§ 59*)—RELEASE OF GUARANTOR—EXTENSION OF TIME OF PAYMENT.

The acceptance by the principal, without the guarantor's consent, of notes for the amount of the debt then due, released the guarantor of payment of the debt when due.

[Ed. Note.—For other cases, see Guaranty, Dec. Dig. § 59.*]

Houghton, J., dissenting.

Appeal from Trial Term, New York County.

Action by Charles B. Fritz and others against Elias Mouakad. From a judgment for plaintiffs, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, LAUGHLIN, HOUGHTON, Mc-LAUGHLIN, and SCOTT, JJ.

Harold Nathan, for appellant.

John A. Thompson, for respondents.

INGRAHAM, J. On October 5, 1905, the defendant, in consideration of a commission of 3 per cent., guaranteed the payment of an account of the firm of Garzouzi Bros., amounting to $4,354.13, and on the 11th of October, 1906, for a similar consideration, guaranteed the payment of an account of the same firm for $2,931.65. The terms upon which these goods were sold to Garzouzi Bros. were that that firm was to make weekly payments of $500 on account of the amount due. Plaintiffs paid the commission, and the goods were delivered to Garzouzi Bros. by the plaintiffs. The firm of Garzouzi Bros. paid to the plaintiffs various sums of money from time to time on account of this indebtedness, but on the 15th of March, 1907, they were considerably behind. On that day the plaintiffs wrote a letter to the defendant stating the condition of the account, from which it appears that they were $1,500 behind in the payment agreed upon. Plaintiffs then said to defendant:

"For the proper protection of our own interests, as well as yours, we shall be obliged to enter suit against Messrs. Garzouzi Bros. and obtain judgment for the amount which is now past due ($5,282.61) unless you will advise us

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in writing that, under your guaranty, we may, without prejudice to our interests, and wholly at your risk, refrain from taking legal steps looking to the collection of the account or the obtaining of security. Please let us hear from you immediately, and oblige."

Plaintiffs received no answer to this letter, but on the 21st of March had a conversation with the defendant over the telephone. The plaintiffs' version of this interview is that the plaintiff asked the defendant to answer the letter of March 15th, which he declined to do. Defendant then told the plaintiff to go ahead and sue, when plaintiff stated that such a suit would be at the defendant's expense, when defendant finally told the plaintiff that plaintiff could use his own judgment as to whether to sue or whether not to sue, or what to do with the matter. On cross-examination the witness said that he could not recall just what was said at this interview, but he had repeated the substance of what was said as follows:

"He declined to put it in writing, and when I told him, if he wanted suit brought, he would have to stand the expense of it, he didn't want to sue then, and told me I might use my own judgment whether to sue or whether not to sue."

Subsequently, and on March 30th, plaintiffs accepted notes from Garzouzi Bros., payable on May 31, 1907, and subsequent dates, for the payment of their indebtedness. These notes were not paid at maturity, and this action is to recover upon the guaranty.

At the end of the plaintiffs' case the defendant moved to dismiss the complaint, which motion was denied, and defendant excepted. Defendant then denies this conversation with one of the plaintiffs above referred to, denied having any knowledge of the taking of the notes or having ever consented to it, and at the end of the whole case defendant renewed his motion to dismiss, which was denied. The court submitted the question to the jury, correctly instructing them that the taking of the notes discharged the defendant, unless they were taken with the defendant's consent; told the jury that the question was one of fact whether or not the seven notes to which reference had been made were given with the consent of the defendant; that if they were given with his consent then the plaintiffs were entitled to a recovery, and if the notes were not given with his consent then there could be no recovery; that if the defendant in that telephone communication told the plaintiff, Mr. Hyde, that he might use his own judgment in protecting the two parties, and if they found that that conversation was of such a nature, and that that statement that was made by the defendant was so broad, as to contemplate the giving of the notes, that then they had reason for finding that the plaintiffs had authority to take the notes, and that would be tantamount to knowledge and consent on the part of the defendant to the acceptance of those notes; and again stated to the jury:

"Then the question narrows itself down to the one, after all, that you are to decide here: Whether the acceptance of those notes was the result of an understanding between the plaintiffs and the defendant that the plaintiffs had full authority to accept the notes, or some understanding such as is testified has been given over the 'phone, or by any other conversations that passed between the parties, and whether, therefore, these notes were given with the consent in law of the defendant."

To this counsel for the defendant excepted upon the ground that the evidence would not justify the finding. One of the plaintiffs also testified generally that he had informed the defendant of the fact that he was expected to accept notes of the principal debtor, but he was so indefinite as to the time and place of such notification and just what was said in relation to it that in the face of the positive denial of the defendant I do not think the verdict can be sustained upon the ground that such a notice implied a consent of the defendant to accept the notes. The case comes down, therefore, to the correctness of the proposition as charged by the court that this authority given to the plaintiff over the telephone was sufficient to justify a finding that the defendant consented to the plaintiffs' extending the time of payment of the indebtedness which the defendant had guaranteed; and, accepting the plaintiffs' version of this conversation, I do not think it was sufficient to justify a finding of such consent. The letter of March 15th related solely to the question of the enforcement of the principal debtor's obligation by legal proceedings. There was no suggestion that notes should be taken, or that the time of payment of the indebtedness should be extended. The debtor had failed to pay according to his agreement; there was then upwards of $5,000 due, for which the defendant was liable on his guaranty; and the question was whether the collection of that indebtedness should be enforced by legal proceedings or act. The plaintiffs requested from the defendant an answer in writing as to whether or not suit should be commenced at once to recover the indebtedness, and, not having received such an answer, this conversation over the telephone resulted.

It is not pretended that there was any suggestion made in that conversation as to the taking of notes or extending the time of the principal debtor. It was rather a question as to what steps should be taken for the enforcement of the claim, and while the defendant refused to answer in writing he told the plaintiff that they could sue or not sue as they pleased. The plaintiff admitted that he could not definitely give the words that were used at this conversation. At one time, in repeating the conversation, he stated that what the defendant said was that he (the plaintiff) could use his own judgment as to whether to sue or whether not to sue, or what to do with the matter. At another time, in attempting to recite the same conversation, he said the defendant told the plaintiff that the plaintiff might use his own judgment whether to sue or whether not to sue. But, whichever phrase was used, the question that was presented for the defendant's determination was what affirmative steps were to be taken against the debtor, not what favor or postponement of payment should be allowed to the debtor. And if the defendant said that the plaintiff could use his own judgment as to what to do with the matter, it seems to me the matter referred to was the matter of suing or not suing, and nothing else. It is not pretended that the plaintiff who had this conversation had in mind at that time the accepting of notes and the postponement of the time of payment, and certainly the defendant was not called upon to determine whether or not he would consent to the acceptance of the notes which would postpone for months the time when the obligation could be enforced against the debtor. The whole amount of this in-

debtedness was due, and the plaintiffs could have enforced it at any time.   By the acceptance of these notes they postponed for months their right to collect the debt, and prevented the defendant from taking any measures necessary for his own protection.   And when the matter in controversy was a question whether the plaintiff was or was not to sue, certainly a statement by the defendant that the plaintiff could use his own judgment as to what to do with the matter cannot possibly be construed as authorizing the plaintiffs to make any contract with the debtor that they pleased, regardless of the rights of the defendant, who was responsible for the indebtedness.

There is nothing to show that the defendant had the slightest interest in protecting this debtor.   He certainly made no request to the plaintiffs to do anything for the debtor's benefit or accommodation. And when the defendant expressly refused to answer the letter in writing he must be taken as declining to assume responsibility for anything that the plaintiffs might do in relation to the enforcement of the claim against the debtor.   I think the evidence is entirely insufficient to sustain a finding that the defendant ever consented to the acceptance by the plaintiffs of notes of the debtor, and that the acceptance of those notes by the plaintiffs discharged the defendant from his obligation as guarantor.

It follows, therefore, that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN, LAUGHLIN, and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting).   I dissent.   The defendant was a guarantor for a commission paid by plaintiffs of specified accounts which they held against Garzouzi Bros.   Payments on such accounts were overdue.   In a conversation had between the plaintiffs and the defendant guarantor respecting the pressing of such accounts for collection by plaintiffs, the defendant told the plaintiffs that they could use their own judgment as to what to do.   The testimony is:

"And as he told me (one of the plaintiffs) at that time, finally, that I could use my own judgment as to whether to sue or whether not to sue, or what to do with the matter."

The plaintiffs did not sue, and after certain payments had been made took notes for the balance, coming due at various times.   Some of these notes were paid, and some were not, and this action is brought for the balance of the account remaining unpaid.

Of course, as a general proposition, the taking of a negotiable note payable at a future day so extends the time of payment and suspends the right of collection that a guarantor is relieved.   It seems to me, however, that where such unlimited authority was given, as the jury was justified in finding was in fact given in the present case, the guarantor is precluded from saying that he was relieved because notes were taken.   Clearly the defendant could not have been relieved from his guaranty if the plaintiffs had extended the time of payment of the accounts beyond the period when the last note was due, if they had

not taken any notes at all. The authority given would have been sufficient to justify such extension of payment of the accounts themselves, if any were needed. No injury by the taking of the notes is pretended. The appellant simply relies upon being released as matter of law, because they were so taken. He denies giving the authority which the plaintiffs claimed he did, but the jury was entirely justified in saying that he made such agreement. It is true the subject of the conversation in the beginning related to bringing suit; but, upon the defendant's attention being called to the disastrous consequences of such action upon the credit of the debtors, the defendant finally said to plaintiffs to use their own judgment in the matter of the accounts and their collection. Under the circumstances, in view of the admissions proved against defendant that he had given such authority, and that he was told of the taking of the notes and made no objection, I think the jury was justified in finding that the authority given was broad enough to permit the plaintiffs to manage the account as they saw fit and as seemed to them best, and to take notes if that seemed to be the best course, and that such authority was not confined to determining simply whether suit should be brought.

Of course, mere knowledge of defendant that notes had been taken and lack of protest did not bind him; but that fact is a circumstance showing what the authority given in fact was. Authority given by a creditor to an agent to "see" his debtor in precarious circumstances and to "act" in the matter is sufficient to authorize him to take personal property in satisfaction of the debt. Oliver v. Sterling, 20 Ohio St. 391. So authority to compromise a tort for "anything he could get" justifies the taking of a promissory note (Mitchell v. Finnell, 101 Cal. 614, 36 Pac. 123), and general authority to make and renew loans binds the principal, although a note is taken which has the effect of releasing a guarantor (Hurd v. Marple, 10 Ill. App. 418), and authority to receive such sum as the creditor could pay binds the principal where an order on a third party is accepted (Ruthven Bros. v. Clarke, 109 Iowa, 25, 79 N. W. 454).

I therefore vote for the affirmance of the judgment.