[Civ. No. 21193. Second Dist., Div. One. Jan. 30, 1956.]

HENRY FLORES, Respondent, v. WOODSPECIALTIES, INC. (a Corporation) et al., Appellants.

 ██

Robert S. Dickerman and Marcus Kalb for Appellants.

Moore, Trinkaus & Binns, Walter S. Binns and Walter R. Trinkaus for Respondent.

NOURSE (Paul), J. pro tem.*—This is an action brought by the plaintiff to recover the amount of a check drawn by the defendant in which the El Paso National Bank was named as payee, and of which plaintiff claimed to be a holder in due course.

Defendant appeals from a judgment in favor of the plaintiff.

The parties to the transactions involved here, other than the plaintiff and the defendant, are the El Paso National Bank (hereinafter called "The Bank") and a Mexican corporation Exportadora Ponderosa, S.A. (hereinafter called "Exportadora").

Responsive to issues tendered by the third amended complaint and the answer thereto the trial court found: that the defendant executed, delivered and negotiated the check in question to the Bank; that the plaintiff was the holder in due course of said check; that said check was complete and regular on its face and that plaintiff and the Bank became the holders of said check before it was overdue, and without notice that it had been dishonored; that plaintiff and the Bank took the check in good faith and for value; that at the time that the check was negotiated to the Bank on August 14th and on that day negotiated to the plaintiff neither the Bank nor plaintiff had knowledge of any infirmity in the check or defect in the title of the person who negotiated it; that on or about July 29, 1953, Exportadora executed its promissory note to plaintiff in the sum of $4,365.60; that plaintiff pledged said note to the Bank as collateral security for his note to the Bank in the sum of $3,547.05; that on August 14, 1953, the Bank negotiated said check to plaintiff in consideration of the plaintiff's paying his indebtedness to the Bank, as evidenced by his said promissory note, and that the Bank then surrendered to plaintiff the note of Exporta-

---

*Assigned by Chairman of Judicial Council.

dora and plaintiff, in consideration of receipt by him of the check in question, discharged the note of Exportadora as paid, and returned the same to Exportadora; that said check was duly presented to the Bank upon which it was drawn but was not honored; that protest was duly made and a protest fee of $5.00 was added to the face of the check and that plaintiff was thereafter required to pay to the Bank the amount of the check plus the protest fee; that plaintiff had demanded from the defendant the payment of the check, but that defendant had failed and refused to pay the same or any part thereof; that the Bank and the plaintiff acted as aforesaid in reliance upon the action of the defendant in sending said check to the Bank and in the belief that it would be honored when presented for payment; that neither plaintiff nor the Bank had any knowledge whatsoever of any indebtedness of Exportadora to the defendant and that the Bank was not the agent of Exportadora and did not hold the account assigned to it for the purpose of collection; that the Bank was not the agent of plaintiff and that neither the Bank nor plaintiff were parties to any loan transactions between defendant and Exportadora and that neither had any knowledge of such transactions; that the Bank did not counsel or advise Exportadora or the plaintiff as to the method of handling such transactions, or in any other regard, that there was a consideration paid by the Bank for the transfer to it of defendant's check, and that there was consideration for the transfer by the Bank to plaintiff of said check; that the defendant's obligation to pay to Exportadora for the merchandise covered by its check accrued on August 12, 1953, and was overdue when his check was received by the Bank on August 14, 1953; that prior to the commencement of the action the Bank assigned all of its right, title and interest in and to the check to plaintiff.

The evidence fully supports the findings of the trial court. The following facts were established by substantial evidence Exportadora was engaged in the business of manufacturing milled lumber, including moldings. Its mill was situated in Mexico. Prior to June of 1953, plaintiff has assisted in marketing its products in the United States by making advances to it on account of sales made. Defendant was engaged in the business of selling lumber, including milled products, at wholesale and retail. In June of 1953, it acquired an interest in Exportadora and loaned Exportadora certain monies. Thereafter, but in the same month, the presi-

dent of defendant, the general manager of Exportadora and plaintiff met in El Paso and it was arranged that plaintiff would finance defendant's purchases from Exportadora by advancing the net amount of invoices for milled lumber which was loaded on trucks in Mexico for delivery to defendant in Hawthorne, California, and that defendant would pay to plaintiff the amounts advanced by him plus two and one half per cent of the advance, such payment to be made after the delivery of the merchandise to defendant at Hawthorne; that plaintiff, in addition to advancing the money, would arrange to secure truckers for the delivery of the merchandise and to take care of all necessary details in connection with the exportation and importation of the merchandise from Mexico to the United States. It was understood that plaintiff did not have sufficient funds to finance these transactions, but would secure such amounts as he needed from the Bank.

Thereafter, and prior to July 28, 1953, six shipments were made by Exportadora to defendant and each transaction was handled in the following manner. When the shipment was loaded on the truck and crossed the border, plaintiff would give Exportadora his check for the net amount of the invoice, and would receive Exportadora's note for the amount of the invoice. He would then borrow from the Bank such amount as he needed over and above his own funds. give his note to the Bank for that amount, and pledge to the Bank Exportadora's note. Exportadora would, at the same time, assign its account, represented by the invoice for that shipment, to the Bank and would write the Bank a letter directing it to accept payment from defendant and upon receiving payment, to credit the amount thereof to the account of plaintiff. Upon the receipt of defendant's check the Bank would deposit it to plaintiff's account. Plaintiff would then draw a check to the Bank for the amount of the note he had given to the Bank upon that transaction. The Bank would redeliver to him his note and Exportadora's note and he would mark that note paid and redeliver it to Exportadora. Neither the Bank nor plaintiff were ever advised that Exportadora was indebted to defendant or that defendant had any claims against Exportadora. Plaintiff did know that defendant had some interest in Exportadora.

On July 28th, the seventh shipment as to which Invoice Number 7 in the amount of $5,457.01 was issued, was made and the plaintiff gave to Exportadora his check in the sum

of $3,547.05 and certain additional funds. On the following day, he gave his note to the Bank in the sum of $3,547.05, and the Bank credited his account with that amount, less the discount on the transaction. On the same day Exportadora gave plaintiff two letters, both of which he delivered to the Bank. The first was addressed to the Bank and stated that it had directed the defendant to pay the amount of Invoice Number 7 directly to the Bank and further stating, "Upon receipt of this remit[t]ance you are hereby authorized to credit same to the account of Mr. Henry Flores." The second was addressed to the defendant and stated that Exportadora had assigned the proceeds of Invoice Number 7 to the Bank and directed the defendant to remit directly to the Bank. This second letter was on July 30th forwarded by the Bank to the defendant. On August 6th defendant wrote to Exportadora stating an account as to Invoice Number 7 which showed a balance due to Exportadora in the sum of $4,673.10 after certain deductions and stating it would forward $4,530 to the Bank on the due date, it enclosed its check for the balance, i.e., $143.10. On August 13th it mailed its check, drawn on the Home Bank, Compton, California, payable to the Bank, in the sum of $4,530, to the Bank, and the check was received by the Bank on August 14th. On receipt of the check, the Bank endorsed it as follows:

"Deposited to the credit of
Henry Flores
Endorsement guaranteed
EL PASO NATIONAL BANK

/s/ J. Moreno
V. P. Cashier"

It deposited the same to the credit of plaintiff and issued to him a duplicate deposit slip in the amount of $4,530 which stated that all deposits not payable at the bank were received for collection at the depositor's risk. At the same time plaintiff drew his check on the Bank and in favor of the Bank for the amount of his note given in connection with the loan made on July 28th, in the sum of $3,547.05. The Bank then delivered to plaintiff his note marked paid and Exportadora's note which had been pledged with it, and plaintiff in turn marked that note paid and delivered it to Exportadora. On August 17th, defendant stopped payment upon the check and gave notice to the Bank that it had done so.

Upon being so advised, the Bank charged plaintiff's account with the amount of the check, this resulted in an overdraft. Plaintiff, on August 24th gave the Bank a new note for that amount, which was later paid by him. Defendant's check was duly protested and no question is raised on this appeal as to the sufficiency of demand, presentment or protest.

■ Appellant makes three points on this appeal. Its first point is that the Bank was only the assignee of the check for collection. The trial court found against appellant upon this issue and not only does the evidence fully support the finding of the trial court, but there is no evidence to the contrary. The evidence is undisputed that the Bank held the account, evidenced by Invoice Number 7 as security for the indebtedness of plaintiff to it up to the amount of that indebtedness, and as trustee for plaintiff for the excess over and above plaintiff's indebtedness. It therefore took the check, not for collection, but in the same capacity in which it held the account.

Appellant's second point is that there was no consideration for the issuance of the check by defendant to the Bank. Here again, the trial court found against appellant as to this point, and the evidence, without conflict, sustains the finding of the trial court. The consideration to the defendant for the issuance of the check was the receipt by it of the goods covered by the invoice. ■ Any consideration that will support a simple contract is sufficient to support a negotiable instrument (Civ. Code, § 3106), and the consideration need not move from the promisee. (*First Nat. Bank* v. *Pomona Tile Mfg. Co.*, 82 Cal.App.2d 592 [186 P.2d 693].)

Appellant's third point is stated by it as follows: "C. The real issue then is whether the Plaintiff Flores is a holder in due course of the check as the trial court found. If he is, he of course took the check free of the defenses of the Defendant and the set-off and counterclaim of the Defendant against Exportadora Ponderosa, S. A. If the Plaintiff is not a holder in due course, *then he stands in the shoes of the El Paso National Bank* and takes subject to the defenses of the Defendant and subject to the set-off and counterclaim." (Emphasis ours.) From this statement by defendant of his contention, it is evident that plaintiff is entitled to recover, if the Bank was a holder in due course and therefore free of any defenses that defendant might have as against Exportadora.

Section 3133, Civil Code (N.I.L., § 52), defines a holder in due course as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular upon its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Applying the evidence here to this definition it is evident that the Bank was a holder in due course if the fact that it is the payee rather than the endorsee of the check does not prevent it from being one. The check in question here was complete and regular upon its face. At the time the Bank received it and acted upon it the check was not. overdue and it had not then been dishonored. The Bank, as we have heretofore shown, took the check for value and took it in good faith for the purposes for which it was issued. There was no infirmity in the instrument or defect in the title of the person (defendant) transferring it and the Bank had no notice of any offsets or defenses to the account as to which the check was tendered in payment. Therefore, if a payee of a check who is not an immediate party to the obligation for which the check is tendered in payment can be a holder in due course, the Bank was such a holder.

Prior to the adoption of the Uniform Negotiable Instruments Act in this state a payee of a negotiable instrument who took in good faith without notice was considered a holder in due course. (*Hockett* v. *Pacific States Auxiliary Corp.*, 218 Cal. 382 [23 P.2d 512]; *Johnson* v. *Ulrey*, 201 Cal. 456 [257 P. 505]; *Pasadena Nat. Bank* v. *Shorten*, 96 Cal.App. 451 [274 P. 358].) Since the adoption of that act the appellate courts of this state have not passed upon the question and the courts of other states which have adopted the Uniform Act are divided upon it, a majority holding that a payee may be a holder in due course. (See Brannan's Negotiable Instruments Law, 7th ed., pp. 591-592, 675-691; Anno. 15 A.L.R. 437; 21 A.L.R. 1365; 26 A.L.R. 769; 32 A.L.R. 289; 68 A.L.R. 962; 97 A.L.R. 1215; 142 A.L.R. 489; 169 A.L.R. 1455; see, also, Ogden on Negotiable Instruments, 5th ed., pp. 282-285; Aigler, *Payees as Holders in Due Course,*

36 Yale L.J. 608; American Institute of Banking, Negotiable Instruments, pp. 109-110.)

It would serve no useful purpose to review here the divergent opinions of the courts of other states. They are fully reviewed in the annotations and texts we have cited above. ▆ Our study of the act has led us to the conclusion that, under a proper interpretation of it, a payee may be a holder in due course, and that the Bank in the case here was such a holder.

Section 3266 (N.I.L. § 191), of the Civil Code, defines a holder as the *payee* or endorsee of a bill or note who is in possession of it. (A check is a bill, Civ. Code, § 3265a.) A payee is therefore a holder within the meaning of section 3133. He is, if he takes in good faith, for value and without notice, a holder in due course, if the transfer to him by the maker constitutes negotiation. Negotiation is accomplished when an instrument is transferred by one person to another in such manner as to constitute the transferee the holder thereof. (Civ. Code, § 3111; N.I.L. § 30.)

Section 3111 reads as follows: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery."

▆ When the first sentence of this section is read with Civil Code, section 3266, it is clear that the delivery of a negotiable check by the maker to the payee makes the payee a holder of that check. The second sentence would seem at first reading to make it necessary, in order that there may be a negotiation of an instrument, that the instrument first come into the hands of a holder and then be delivered by him (with proper endorsement if not payable to bearer) to another. ▆ This sentence, however, is not definitive of the only manners in which an instrument may be negotiated; it is only illustrative of the manners in which an instrument in the hands of a holder may be negotiated. As stated by the Supreme Court of Massachusetts in speaking of this sentence, it "was not intended to include all the ways in which an instrument might be negotiated, nor to restrict the comprehensive terms of the preceding sentence. Plainly under these two sections [sections 30 and 191 of the Uniform Law] a negotiable instrument payable to a named payee in negotiated when the physical possession of it is handed for value

to the person named as payee. One effect of the last sentence of section [30] is to describe the method by which the person who first becomes holder may pass title. It does not comprehend all the ways by which an instrument may be negotiated." (*Liberty Trust Co.* v. *Tilton,* 217 Mass. 462 [105 N.E. 605, 606, L.R.A. 1915B 144].)

There seems to be no sound reason to hold that the Bank here should not be held to be a holder in due course. It is as much an innocent purchaser for value as it would have been had defendant delivered the check to Exportadora and it had immediately endorsed and delivered the check to the Bank. The Bank, as we have shown, meets all of the requirements of section 3133 as to a holder in due course as fully as it would have met those requirements had the check passed through the hands of the party to whom the defendant was directly indebted instead of having been made payable directly to the Bank at the direction of that party. To hold that an innocent payee is not a holder in due course would impede commercial transactions such as those involved here. On the other hand, to hold that such a payee is a holder in due course facilitates these transactions by giving security to them. Inasmuch as the payee, in order to be a holder in due course, must meet all of the requirements that an endorsee would, no undue burden is placed upon the maker of the check. ▪ If a payee is the immediate creditor of the maker, then he cannot be a holder in due course for he is on notice of any defenses or offsets that the maker might have against him. Thus, if the check here had been made payable to Exportadora and had been in its hands at the time payment was stopped, Exportadora could not assert that it was a holder in due course, for it would have been on notice of defendant's offsets.

What we have heretofore said makes it unnecessary to determine the questions raised by appellant as to whether plaintiff gave a consideration for the transfer of the check to him and thereby became a holder in due course, or as to whether the endorsement placed on the check by the Bank was a restrictive endorsement. When the check was deposited to his account, plaintiff became a holder of the check through transfer from the Bank, and as the Bank was a holder in due course, plaintiff had the same rights as it did. (Civ. Code, § 3139.) Further than this, the trial court found, and the evidence upholds its finding, that plaintiff was the assignee of all of the rights of the Bank.

■ There is, however, another ground upon which the judgment of the trial court must be sustained. The plaintiff pleaded and the court found facts which operate as an estoppel against defendant asserting its offsets as against either plaintiff or the Bank. The defendant is estopped because the Bank and plaintiff did exactly what defendant intended them to do and was upon notice that they would do, when it delivered the check to the Bank. The defendant knew that the plaintiff had in expectation of receiving payment from defendant advanced to Exportadora the amounts for which its check was drawn. It knew that Exportadora had issued its note to plaintiff and that that note and its and Exportadora's account against it had been pledged to the Bank for money borrowed by the plaintiff in order to make said advance to Exportadora. It knew that the Bank would use the check to satisfy plaintiff's indebtedness to it and that plaintiff would be obligated to satisfy Exportadora's indebtedness to him. It knew these facts or, at least, was upon notice of them because that was the arrangement that defendant had made with plaintiff and that was the course of business carried out in the six transactions which immediately preceded the one in question. If defendant were permitted to set up its offsets against the Bank or plaintiff both Exportadora and defendant would be unjustly enriched. Exportadora would have received payment in full for its merchandise and been relieved of its obligation to plaintiff and defendant would have received that merchandise without paying therefor. Either the Bank or plaintiff would be left "holding the sack." Defendant knew of its offsets at the time it requested plaintiff to make his advances to Exportadora and at the time it drew its check which resulted in Exportadora's indebtedness to the plaintiff and plaintiff's indebtedness to the Bank being satisfied. It was incumbent upon it to speak and put plaintiff and the Bank on notice before they acted in reliance upon the check which defendant issued. Surely there could not be a stronger case for an estoppel. (*Atlantic City Nat. Bank* v. *Commercial Lbr. Co.*, 107 N.J.L. 492 [155 A. 762, 75 A.L.R. 1413].)

The judgment is affirmed.

Doran, Acting P. J., and Fourt, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 21, 1956.