[Civ. No. 6916. Fourth Dist. Apr. 2, 1963.]

DOROTHY BURKE, Plaintiff and Respondent, v. MISSION BAY YACHT SALES et al., Defendants and Appellants.

Samuel Reisman and Gray, Cary, Ames & Frye for Defendants and Appellants.

White, Froehlich & Peterson and Paul A. Peterson for Plaintiff and Respondent.

COUGHLIN, J.—This is an action to recover the proceeds

of a $10,000 bank cashier's check issued at the request of the plaintiff, the respondent herein; made payable to the defendant Mission Bay Yacht Sales, a partnership, one of the appellants herein; allegedly was caused to be issued and paid for by the plaintiff in reliance upon the false representations of a man named Cowan; and, thereafter, allegedly received and cashed by the payee in bad faith.

On April 5, 1960, Cowan and the plaintiff were parties to a marriage ceremony in Mexico and thereafter lived as husband and wife. Ten days later Cowan chartered a $65,000 yacht owned by the defendant Robbins, who also is one of the appellants herein, the transaction being effected at San Diego through the services of the defendant Mission Bay Yacht Sales, as agent for the owner; declared his intention to take his bride on a honeymoon trip aboard this yacht into Mexican waters; executed a bareboat charter agreement with respect to the yacht in question, by which it would be leased to him from May 1, 1960, to August 8, 1960, for $10,000; and gave Mission Bay Yacht Sales his personal check in the sum of $5,000 as a downpayment on the charter. The agreement contained no provision as to the time when the $10,000 should be paid. The $5,000 check was returned, after deposit, with the notation that the drawer had no account in the bank upon which it had been drawn. A representative of the yacht sales firm advised Cowan that the check had been returned and the latter stated that he had mistakenly drawn the same on an account which just had been closed, and that he would replace it with a cashier's check for the total amount of the charter, viz., $10,000.

Cowan accompanied the plaintiff to the latter's home in Atherton, California; represented that he was a wealthy man; told her that he was selling some property in Texas for $300,000 and that he had to send his attorney in that state a check for $8,000 to clear the title to this property, which would cause him to be short of cash; promised that if she would advance him the $10,000 payable on the charter that he would cause a $75,000 first payment on the Texas property sale to be deposited in her account while they were on their honeymoon; and declared his intention of providing for her and assuming the financial responsibility of caring for her children by a previous marriage. Cowan also made other representations concerning his financial status and his educational background, but a consideration of those is not essential to the decision herein.

Relying upon the aforementioned representations, statements and promises, the plaintiff liquidated her assets; delivered $10,000 to the Crocker-Anglo National Bank of San Francisco; requested that bank to issue its cashier's check in the sum of $10,000 payable to the defendant Mission Bay Yacht Sales; received and receipted for that check; and the next day delivered it to Cowan, who indicated his intention to return to San Diego and obtain the chartered yacht preparatory to their honeymoon trip. Cowan also obtained an additional $4,000 from the plaintiff in traveler's checks; left the home in Atherton; was arrested in Bakersfield for speeding and found to have had a $10,000 check and some guns in his possession; but was released shortly thereafter upon the receipt by law enforcement officers of assurances from the plaintiff respecting his good character, which were given in response to an inquiry by the sheriff. However, the conversation between the plaintiff and the sheriff planted the seed of suspicion that caused her to make an investigation from which she concluded that the man she supposed to be her husband was an ex-convict on parole, who probably was on his way to Mexico.

On the following morning, which was April 29, 1960, the plaintiff called the yacht sales office by telephone; spoke to the manager thereof; inquired whether Cowan had arrived and was advised that he had not; said that he was on his way to San Diego but offered the opinion that he probably would not stop there but would proceed to Mexico; told the manager that Cowan was an ex-convict on parole who had stolen cars in Texas and taken them to Mexico; stated that he was driving a rented car, and had in his possession $4,000 in traveler's checks and a $10,000 cashier's check which she had bought; directed the manager to hold Cowan if he did appear, and not to let him have the boat; asked that she be informed by telephone should he show up; and advised that her brother was on his way to San Diego to take care of the matter.

Less than 10 minutes later Cowan appeared at the yacht sales office; delivered the cashier's check; was told that he could not have the yacht until he furnished proof of financial responsibility and replied by saying that he had asked the plaintiff to bring that down; was refused the return of the $5,000 "bad check" because he did not have the receipt therefor with him; was not given possession of the yacht; departed after giving his address to the manager and stating that he intended to do some shopping.

Thereupon the manager telephoned the plaintiff; related the foregoing events and was told that Cowan had not asked her to "bring down" any proof of financial responsibility; also related that Cowan had said that he was the owner of the Crown Drug Stores, but was told by the plaintiff that this was not true; advised that his firm had not been able to "get anything on Cowan"; asked if the plaintiff might give him a lead in this regard and was given the name of a supposed acquaintance living in a nearby city; was asked about the $10,000 cashier's check and replied that it had been deposited "for safe keeping" in their trust account; and assured the plaintiff that his firm would not let Cowan have the boat. At this time the check actually had not been deposited.

Sometime during the same morning, the plaintiff's brother arrived in San Diego; was unable to contact the yacht sales manager; tracked down Cowan; with police assistance recovered the $4,000 in traveler's checks and other property belonging to the plaintiff but filed no formal charges; in the late afternoon of the same day went to the yacht sales office and saw the manager; reported to the latter what had taken place and was told that he was lucky to have recovered as much as he had; inquired concerning the $10,000 check and was advised that it had been deposited in the "trust department of a certain bank pending disposition"; indicated his intention to go to the charter boat to pick up the man who had been employed to act as its skipper and was warned: "No one is supposed to be on that yacht. If Mr. Robbins knew about it he would blow his top."

Apparently, Cowan was released by the police and admonished to leave the state. He has not been heard of or from since; has not provided for the plaintiff or her children; and did not cause a $75,000 or any other deposit to be made in her bank account. The envelope containing the letter and check for $8,000 which had been mailed to his attorney in Texas was returned unclaimed.

On May 3, 1960, which was four days after the $10,000 cashier's check had been deposited by the defendant Mission Bay Yacht Sales in its trust account, the latter paid the defendant Robbins $8,500 of that amount and retained $1,500, purportedly as a commission, although a notation on the check to Robbins indicated that $1,000 had been retained as a commission and that an additional $500 had been retained without specifying for what purpose.

The plaintiff demanded that the cashier's check be re-

turned to her, and when the same was not forthcoming brought this action to recover the $10,000 in question.

The foregoing statement of facts is in substantial accord with the findings of the trial court, which included a specific finding that the cashier's check had been obtained from the plaintiff by Cowan through false representations. From the facts as found the court concluded that: (1) The plaintiff was not a party to the charter agreement; (2) the cashier's check was a negotiable instrument which had not been validly delivered to the defendants; (3) that the latter were not holders in due course thereof in that they did not accept the same in good faith or for value; and (4) that the amounts received by them "ought in justice and conscience be paid over to plaintiff." Judgment against the defendant Mission Bay Yacht Sales in the sum of $1,500 and against the defendant Robbins in the sum of $8,500 was entered accordingly. The defendants have appealed and contend that the judgment should be reversed because: (1) defenses under the negotiable instruments law do not apply to the instant situation; (2) no notice was given to the defendants sufficient to disqualify them as holders in due course; (3) funds obtained by a defrauder and given to his creditor cannot be claimed by the defrauded party; and (4) the evidence is not sufficient to sustain the finding that the representations made by Cowan to the plaintiff were false. For the reasons hereinafter noted, we find these contentions to be without merit.

A cashier's check is a bill of exchange (Civ. Code, § 3265a), and as such is a negotiable instrument. (*Christian* v. *California Bank,* 30 Cal.2d 421 [182 P.2d 554].) A valid delivery is essential to its effectiveness.

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. . . ." (Civ. Code, § 3097.)

■ It is obvious that in a situation such as the one at hand, the drawer-drawee of a cashier's check, *viz.*, the bank, impliedly authorizes the person ordering, paying for, and receiving possession of the same, to deliver or withhold delivery thereof to the payee therein named. The plaintiff, upon receiving possession of the subject check from the Crocker-Anglo Bank had practical control over her $10,000 investment therein. ■ Her relinquishment of the check to Cowan for delivery to the defendant Mission Bay Yacht Sales had been obtained by fraud and any consequent ostensible authority to effect such delivery, or any indicia of title acquired by him also was obtained by fraud.

■ The trial court was authorized to conclude from the evidence before it that the authority conferred upon Cowan by the plaintiff to make a delivery of the check had been revoked; that no delivery had been effected; and that she was entitled to possession thereof.

■ The payee of a cashier's check in possession thereof is the holder of a negotiable instrument. (Civ. Code, § 3097; *Flores* v. *Woodspecialties, Inc.*, 138 Cal.App.2d 763, 770 [292 P.2d 626].) ■ However, to become a holder in due course a payee must have taken the check in good faith, for value, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it. (Civ. Code, § 3133; *Flores* v. *Woodspecialties, Inc.*, *supra*, 138 Cal.App.2d 763, 771.) ■ Any right which Cowan had to effect delivery of the subject check to the defendant Mission Bay Yacht Sales, and thus place the latter in the position of a holder thereof, had been obtained by fraud. This was the equivalent of a defective title. In any event, the authority to effect such a delivery, having been obtained by fraud, was voidable, and thus constituted an infirmity in the instrument. (Civ. Code, § 3136.) ■ To constitute a notice of an infirmity in a negotiable instrument, or a defect in the title of the person negotiating the same, "the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." (Civ. Code, § 3137.) The defendants contend that the evidence in the instant case is not sufficient to prove that they had actual knowledge of any infirmity in the subject check or of any defect in Cowan's authority to deliver it. Nevertheless, there is ample evidence in support of the trial court's conclusion that in taking and depositing this check the defendant Mission Bay Yacht Sales

acted in bad faith. Its manager had compelling reasons and ample opportunity to ask the plaintiff concerning Cowan's right to the check and his authority to deliver the same; had been told that Cowan was an ex-convict who had stolen automobiles and disposed of them in Mexico; had been advised that the check had been purchased by the plaintiff; but deliberately refrained from making such inquiry. ■ It is settled that " 'where the circumstances are such as to justify the conclusion that the failure to make inquiry arose from a suspicion that inquiry would disclose a vice or defect in the instrument or transaction' " the person taking such instrument is charged with knowledge of any infirmity therein or any defect in the title of the person delivering the same to him which such an inquiry would have revealed. (*Popp* v. *Exchange Bank,* 189 Cal. 296, 303 [208 P. 113]; *Christian* v. *California Bank,* 30 Cal.2d 421, 425 [182 P.2d 554].)

■ An application of the foregoing rule to the facts heretofore related fully supports the determination of the trial court that the defendants did not take the subject check in good faith, and for this reason, if for no other, they were not holders in due course. (*Imperial Gypsum & Oil Corp.* v. *Chaplin,* 4 Cal.App.2d 109, 113 [40 P.2d 596].) ■ The action of an agent within the scope of his authority is the action of his principal. (Civ. Code, § 2330; *Gudger* v. *Manton,* 21 Cal.2d 537, 547-548 [134 P.2d 217]; *Mitchell* v. *Finnell,* 101 Cal. 614, 622 [36 P. 123].) Under these circumstances, the bad faith of the defendant Mission Bay Yacht Sales in the premises was imputed to the defendant Robbins.

■ In support of their contention that the evidence is insufficient to sustain the finding that the representations relied upon by the plaintiff were false, the defendants claim that the only proof thereof is hearsay testimony admitted over their objection.[1] This claim applies only to a few of the representations in question. The bulk thereof were proven false by nonobjectionable evidence. Cowan's representation that he was a wealthy man was proven false by inference from the fact that he wrote a check on a nonexistent bank account; did not complete the charter transaction; returned the $4,000 in traveler's checks to the plaintiff's brother under circumstances which would not have been tolerated by a man of

---

[1]The testimony in question was hearsay as proof of the false character of the representations in question, but was not hearsay for other purposes, and the order admitting it was not error. (Gen. see *Johnson* v. *Nicholson,* 159 Cal.App.2d 395, 411 [324 P.2d 307].)

wealth; left in a police car; and never has been seen or heard from since. The representations that he owned property in Texas which he was selling for $300,000, expected a downpayment thereon of $75,000, and had to forward $8,000 to his attorney to clear the title, were proven false by inference from the fact that the letter to his attorney containing instructions in the premises and an $8,000 check was returned unclaimed. Furthermore, the evidence satisfactorily establishes that Cowan's promises to provide for the plaintiff, to assume the financial responsibility of caring for her children, and to cause a $75,000 payment to be deposited in her bank account, were made without intent to perform. This constituted fraud. (Civ. Code, § 1572, subd. 4.) Evidence of intent not to perform was supplied by inference from the failure to perform and the other factors heretofore noted. (*Longway* v. *Newbery,* 13 Cal.2d 603, 610, 612 [91 P.2d 110].)

The defendants contend that the plaintiff had no interest in the subject check; that the bank was both the drawer and the drawee thereof; that the defendant Mission Bay Yacht Sales was the payee; that these persons were the only ones to the transaction; and, for this reason, the plaintiff is not entitled to recover. The law is not inhibited in its quest for justice by a lack of classic formulae to guide the way. Even though the plaintiff was not actually the drawer of the instant cashier's check, her rights in the premises simulated those of the drawer of an ordinary check. She paid $10,000 to the bank for which it issued its check payable, at her request, to the defendant Mission Bay Yacht Sales.

For the purpose at hand, there is no legally significant distinction between such a situation and that which would have existed if she had deposited $10,000 with the bank and requested its certification of her check payable to that defendant. In the latter instance the payee's right to the $10,000 would not have come into being until the check had been delivered, and in the meantime the plaintiff would have had the right to cause it to be cancelled and her account recredited with the amount thereof. (*Umbsen* v. *Crocker First Nat. Bank,* 33 Cal.2d 599, 602 [203 P.2d 752].) The check was the property of the plaintiff until delivery. (*Garthwaite* v. *Bank of Tulare,* 134 Cal. 237, 241 [66 P. 326].)

The foregoing discussion has been channeled to the contentions made by the defendants in support of their request for a reversal of the judgment. Independently of these considerations, the judgment should be affirmed in accordance

with the conclusions of the trial court that the defendant Mission Bay Yacht Sales received $1,500 and the defendant Robbins received $8,500 "which ought in justice and conscience be paid over to the plaintiff." The theory of the law in support of this conclusion is commonly referred to as that of unjust enrichment.

Stripped of any attempt to formally categorize them, the facts in the instant case establish that, through Cowan's fraudulent conduct, the defendants obtained $10,000 from the plaintiff and no equitable consideration exists for permitting them to retain it. They accepted the cashier's check for this amount in bad faith, knowing that it had been purchased by the plaintiff, and knowing facts indicating that any inquiry into the matter would confirm a suspicion that she had been the victim of a fraud. Although the defendants gave Cowan a receipt for $10,000 after payment of the amount due under the charter, they never permitted him to have possession of the yacht; he never took possession of the yacht; and they subsequently chartered it within the term of his lease. The circumstances justify the conclusion that the defendants, after they received the information that Cowan was an ex-convict who had stolen cars and taken them to Mexico, never intended to permit him to have the yacht and, in substance, by their action terminated the charter agreement. If Cowan had retained possession of the check, plaintiff would have been entitled to recover it from him. His transfer thereof to the defendants, under the circumstances of this case, did not confer upon them any right to retain the check or the proceeds thereof as against the plaintiff. (*Lezinsky* v. *Mason Malt W. D. Co.*, 185 Cal. 240, 249 [196 P. 884].) The defendants were not holders in due course of the subject check, and they did not act in good faith. Their acceptance thereof constituted the acceptance of the fruits of a fraud. In equity and good conscience the proceeds thereof belonged to the plaintiff. To allow the defendants to retain the same would sanction their unjust enrichment at the expense of the plaintiff, which the law will not permit. (Generally, see *Ward* v. *Taggart*, 51 Cal.2d 736, 741 [336 P.2d 534]; *Levy* v. *Wolff*, 46 Cal.2d 367, 368 [294 P.2d 945]; *Philpott* v. *Superior Court*, 1 Cal.2d 512, 524-525 [36 P.2d 635, 95 A.L.R. 990]; *County of Santa Cruz* v. *McLeod*, 189 Cal.App.2d 222, 228 [11 Cal. Rptr. 249]; *Cupps* v. *Hendricks*, 137 Cal.App.2d 211 [289 P.2d 810]; *Lazzarevich* v. *Lazzarevich*, 88 Cal.App.2d 708, 714-716, 720 [200 P.2d 49].)

The defendants contend that funds obtained by a defrauder and given to his creditor may not be followed and claimed by the person defrauded. The cases cited in support of this contention are not factually similar to the case at bar; involve equities in favor of the person receiving the defrauded funds; do not involve any bad faith by that person; and are not applicable to the situation at hand.

The judgment is affirmed.

Griffin, P. J., and Brown, (G.), Jr., concurred.