[Sac. No. 780.   Department One. — September 30, 1901.]

## W. W. GARTHWAITE et al., Executors, etc., Respondents, v. BANK OF TULARE, Appellant.

CHECK — ORDER DRAWN UPON ONE BANK BY ANOTHER — DISHONOR — ACTION AGAINST DRAWER. — An order drawn upon a bank is a check, though drawn by another banker; and if such check is dishonored by the bank upon which it is drawn, an action lies in favor of the owner of the check, or his assignee, against the bank which drew the check.

ID. — PURCHASE OF CHECK TO PAY DEBT — MISCARRIAGE — PAYMENT TO FORGER — OWNERSHIP BY PURCHASER. — Where the check sued upon was purchased by a debtor of the payee, and mailed to him, to be collected by him and applied upon his indebtedness, but the payee never received it, and it was paid upon a forged indorsement to another person, such payment gave the drawee no right to retain the check, or to claim reimbursement from the drawer, but the check remained the property of the purchaser.

ID. — DEMAND BY PAYEE — AGENCY FOR PURCHASER — NOTICE OF DISHONOR — LIABILITY OF DRAWEE. — A demand by the payee, upon the bank upon which the check was drawn, was, in legal contemplation,

made by him as agent for the purchaser, and its refusal to pay, while the check was wrongfully retained in its possession, was a dishonor of the check, and notice of such dishonor, given to the bank which drew the check, fixed its liability to the purchaser, or his assignee, for the money originally paid for the check, which may be enforced at any time within the statute of limitations.

ID. — DUTY OF DRAWER AFTER NOTICE — NEGLIGENCE — INSOLVENCY OF DRAWEE — LOSS OF DRAWER. — Upon receiving notice of dishonor, the bank which drew the check should either demand the return of the check or the return of the money; and where it neglected to do either, it must bear any loss occurring through intervening insolvency of the drawee, after the liability of the drawer was fixed.

ID. — BURDEN OF PROOF — GENUINENESS OF CHECK — PROOF OF FORGERY. — In assuming that the drawee properly paid the check, the drawer must prove the genuineness of its indorsement; and where the indorsement was shown at the trial to be a forgery, the liability of the drawer to repay the money received from the purchaser of the check is established.

ID. — LIABILITY OF DRAWER FOR INTEREST. — The liability of the drawer of the check is the same as that of a first indorser of any other negotiable instrument, and, under the provisions of section 3116 of the Civil Code, construed with section 3177 of the same code, the court was justified in awarding interest upon the check from its date.

ID. — ACTION BY EXECUTORS — EVIDENCE — LETTERS TESTAMENTARY. — In an action by executors, the introduction in evidence of the letters testamentary is sufficient evidence of the death of the party entitled to sue, and of an order appointing the plaintiffs as his executors.

ID. — PRODUCTION OF CHECK AT TRIAL — EVIDENCE — NON-PAYMENT. — The production of the check at the trial, without any genuine indorsement thereof by the payee, is sufficient evidence that it was not paid to him, in the absence of evidence showing such payment.

ID. — REFUSAL TO DISMISS ACTION — APPEAL — ORDER NOT INVOLVING MERITS. — An order refusing to dismiss an action is not itself appealable, and where it does not involve the merits of the action, or necessarily affect the judgment rendered therein, or affect any substantial rights of the defendant, it will not be reviewed upon appeal from the judgment, and cannot constitute such error as to justify a reversal of the judgment.

ID. — DEMURRER — MOTION TO DISMISS — DISCRETION. — Where a demurrer was interposed to the complaint, and a motion was made to dismiss the action for want of prosecution, it was in the discretion of the court to refuse to hear the motion to dismiss, and to hear the demurrer. Its determination to hear the demurrer was, in effect, a denial of the motion to dismiss, and the subsequent refusal of the court to allow the motion to dismiss to be renewed was matter of discretion, which is not reviewable upon appeal.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial.   W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

J. W. Davis, and Bradley & Farnsworth, for Appellant.

The responsibility of the drawer of the check ceased on account of failure to present it to the drawee for payment within a reasonable time.   (2 Daniel on Negotiable Instruments, sec. 1590; *Ritchie* v. *Bradshaw,* 5 Cal. 229; Civ. Code, sec. 3213.)

John Yule, William W. Cross, and John M. Poston, for Respondents.

The instrument sued upon is a check, being drawn upon a bank.   (Civ. Code, sec. 3254); and it is none the less a check because drawn by a bank.   (5 Am. & Eng. Ency. of Law, 2d ed., p. 1030, title "Checks"; *State* v. *Vincent,* 91 Mo. 662; *Bull* v. *Bank of Kasson,* 123 U. S. 105, 110.)   The forged indorsement of the check passed no title.   (*Hatton* v. *Holmes,* 97 Cal. 208, 212; *Citizens' National Bank etc.* v. *Importers and Traders Bank etc.,* 119 N. Y. 197; 1 Randolph on Commercial Paper, sec. 166; *Graves* v. *American Exchange Bank,* 17 N. Y. 205; *Indiana National Bank* v. *Holtsclaw,* 98 Ind. 85; *Cochran* v. *Atchison,* 27 Kan. 728.)   So long as the drawee bank remained solvent, when demand was made and notice of dishonor given, the drawer's liability becomes thereby fixed, though months or years may have elapsed since the check was drawn.   (2 Daniel on Negotiable Instruments, 4th ed., sec. 1589.)

HARRISON, J.—The complaint herein alleges that on January 31, 1890, J. O. Lovejoy purchased from the defendant its check upon the Pacific Bank, at San Francisco, for the amount of $750, payable to the order of B. F. Smith, and paid to it therefor the sum of $750.   Lovejoy at that time was indebted to Smith in an amount larger than the amount of the check, and on the same day sent the check by mail, directed to Smith at Oakland.   Smith did not receive the check, but on February 5th it was presented to the Pacific Bank by another person, who represented himself to be the payee, and was paid to him.   About the 17th of February, Smith notified the Pacific Bank of the miscarriage or loss of the check, and was

then informed by the bank that it had already been presented to it and paid, and at the same time the check was exhibited to him, with the indorsement of his name thereon. Smith thereupon pronounced the indorsement a forgery, and demanded of the bank that it deliver the check to him, or pay to him its amount. His demand was refused, and he immediately notified Lovejoy and the defendant herein of such refusal. July 31st, Lovejoy sold and assigned the check to Smith, together with all his claim and interest in the moneys represented thereby, and his demand against the defendant therefor. The defendant and the Pacific Bank had each due notice of this sale and assignment. Smith died in 1893, and the plaintiffs herein were appointed his executors. The check remained in the custody of the Pacific Bank until January 25, 1894, when it was delivered to the plaintiffs herein. Thereupon they again demanded its payment from that bank, which was refused, and notice thereof given to the defendant, and on January 30th a demand for its payment was made of the defendant herein, which was refused. Thereafter, on the same day, this action was commenced. The defendant filed a general demurrer to the complaint, which was overruled, and it thereupon filed its answer. The cause was tried by the court, and upon the evidence presented by the plaintiffs — the defendant offering no evidence — the foregoing facts were found, and judgment rendered in favor of the plaintiff. From this judgment and an order denying a new trial the defendant has appealed.

Stated in concise form, the facts alleged in the complaint show that on January 31, 1890, Lovejoy paid to the defendant the sum of $750 in consideration of its agreement — evidenced by its check — that the Pacific Bank would pay the same to B. F. Smith upon his demand therefor; that upon Smith's demand the Pacific Bank refused to make the payment, and that the defendant had due notice thereof. The action is brought by the representatives of Smith, to whom Lovejoy had assigned his claim against the defendant, for this breach of its agreement with him, to recover the amount of money so paid to it, with interest. The other allegations in the complaint, and facts found by the court, are merely matters of inducement, explanatory of these essential facts, and establishing the connection of the plaintiffs with the cause of action originally vested in Lovejoy.

The instrument which Lovejoy received from the defendant was drawn by it upon a bank, and is therefore a check. (Civ. Code, sec. 3254.) It is none the less a check, though drawn by another banker. It was drawn at the direction of Lovejoy, to the order of B. F. Smith, for the purpose of having him collect the same from the Pacific Bank and place the amount to the credit of Lovejoy's indebtedness to him. Although Lovejoy sent the check by mail to Smith, it was never received by Smith, and consequently remained the property of Lovejoy. The payment by the Pacific Bank, on February 5th, upon a forged indorsement, gave to that bank no rights against the defendant, either to retain the check, or to claim a reimbursement for the amount paid. (*Janin* v. *London etc. Bank,* 92 Cal. 14.[1]) Smith's demand upon the bank for the payment of the check on the 17th of February was, in legal contemplation, as the agent of Lovejoy, and the refusal of the bank to pay him was a dishonor of the check. The possession of the check at that time by the bank obviated any necessity of its physical presentation by Smith. The notice to the defendant of this dishonor fixed the liability of the defendant to Lovejoy for the money originally paid by him for the check. He was not required to enforce this liability immediately, but could bring his action therefor at any time before it should become barred by the statute of limitations. When the defendant received this notice of the dishonor of its check, its proper course was to demand from the Pacific Bank either the return of the check, if it was of the opinion that it had been properly paid, or if not, of the money which it had provided for its payment. Its cashier testified that it ceased to transact business through the Pacific Bank in August of that year. In the usual course of business, there would then have been a settlement of the account between them, and the defendant would have demanded the return to it of the check, or of the money which it had provided for its payment. Instead thereof, it permitted the bank to retain the check, and did not insist upon the return of the money. If by reason of this conduct the defendant has sustained injury, it is to be borne by itself, and not by Lovejoy or his assignee. It received notice of the dishonor of the check soon after it was made, and although it appears that some correspondence in reference thereto was had between it and the

[1] 27 Am. St. Rep. 82.

Pacific Bank, it took no steps to protect itself, but appears to have relied upon its view, as expressed in one of the letters of its cashier, that it was under no responsibility in the matter. In thus assuming that the payment by the Pacific Bank was properly made, and was a discharge of its obligation to Lovejoy, it was bound to show that the indorsement upon the check was genuine. When it appeared at the trial herein that this indorsement was a forgery, its liability for the money received by it from Lovejoy was established.

Any delay in the presentation of the check was available as a defense by it only to the extent of the injury which it had suffered thereby. (Civ. Code, sec. 3255.) But there is no claim that it had suffered any injury thereby prior to its receipt of the notice of dishonor. Its only claim of injury is contained in the allegation, in its answer, that the Pacific Bank became insolvent in 1893. Lovejoy's right of action against it had, however, been fixed long prior to that date.

Section 3177 of the Civil Code makes the rights and obligations of the drawer of the check the same as those of the first indorser of any other negotiable instrument, and section 3116 of the Civil Code declares that every indorser of a negotiable instrument warrants to every subsequent holder thereof, who is not liable thereon to him, — "4. That if the instrument is dishonored, the indorser will, upon notice thereof duly given to him, or without notice, where it is excused by law, pay the same with interest." The action of the court in awarding to the plaintiffs interest upon the check from its date was in accordance with these provisions. By the breach of the defendant's agreement, it became liable to Lovejoy for interest upon the money from the time it had received it from him.

The introduction of the letters testamentary to the plaintiffs was sufficient evidence of the death of Smith, and of an order of the superior court appointing them as his executors. (*Dennis* v. *Bint*, 122 Cal. 39.[1]) The production of the check at the trial, without any indorsement of the payee, was evidence that it had not been paid to Smith, and there was no evidence tending to show that it had been paid to him.

The complaint herein was filed January 30, 1894, and a demurrer thereto was filed March 19, 1894. Before any action had been taken on the demurrer, the defendant moved the

---

[1] 68 Am. St. Rep. 17.

court, March 19, 1897, to dismiss the action for want of prosecution, and on March 20th its motion was granted, and a judgment dismissing the action was entered March 22d.   Upon an appeal from this judgment, it was reversed (*Garthwaite* v. *Bank of Tulare*, 123 Cal. 132), upon the ground that certain evidence had been improperly received.   Upon the going down of the *remittitur* the clerk placed the cause upon the law and motion calendar, and at the first calling of this calendar the defendant asked to have its original motion to dismiss heard, and the plaintiffs asked that the demurrer be heard. The court, after argument, entered an order denying the application of the defendant, and refused to hear its motion.   When the demurrer came on to be heard, the defendant objected to a hearing thereof until the court had first disposed of the motion to dismiss.   The court overruled this objection, and the defendant then asked leave to renew its motion to dismiss for want of prosecution.   This motion was also denied.   It is now urged by the appellant that the court erred in these rulings, and that for its errors the judgment should be reversed.

We are of the opinion, however, that the action of the court in this respect did not affect any substantial rights of the defendant, and was not such error as to justify a reversal of the judgment.   The order of the court refusing to dismiss the action is not itself appealable, and upon an appeal from the judgment this court can review only an intermediate order or decision which involves the merits or necessarily affects the judgment. (Code Civ. Proc., sec. 956.)   The decision on the motion did not involve the merits of the action, nor did it necessarily affect the judgment thereafter rendered.

The reversal of the judgment upon the former appeal had the effect to leave the parties to the action in the same position as they were prior to its rendition in the superior court.   The motion for a dismissal of the action, and the demurrer to the complaint, were both before that court for its consideration, in the same manner and to the same extent as they were before its former action thereon, or as if they had then been presented to the court for the first time.   The defendant did not have an absolute right to have its motion considered and determined before the court could take up and consider the demurrer, but its application therefor was addressed to the discretion of the court.   If the court had made a formal order denying the

motion to dismiss, its discretion therein would not have been subject to review. But its determination to hear the demurrer was equivalent to a denial of the motion. Whether the court would hear the motion to dismiss, or would hear the demurrer first, when both were brought before it, was addressed to its discretion, and the exercise of this discretion, as well as its subsequent refusal to permit the defendant to renew its motion, is not subject to review. In the exercise of its discretion upon the motion of the defendant, the court was at liberty to consider the fact that the plaintiffs were at the same time seeking a disposal of the demurrer; and if it was of the opinion that the plaintiffs' motion for a hearing upon the demurrer was a sufficient answer to the claim of the defendant that they were not prosecuting the action with sufficient diligence, its discretion was properly exercised in refusing to dismiss the action.

The judgment and order are affirmed.

Van Dyke, J., and Garoutte, J., concurred.