**In re Peter LEE and Ken Ota, a general partnership, Debtor.**

**HALL–MARK ELECTRONICS CORPORATION,**
**Appellant,**

**v.**

**Charles E. SIMS, Chapter 7 Trustee, Appellee.**

**BAP No. NC–94–1599–OAsMe.**
**Bankruptcy No. 92–36153–STC.**
**Adv. No. 93–3501–DM.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 20, 1994.

Decided March 20, 1995.

Charles M. Tatelbaum, Clearwater, FL, Timothy H. Hopkins, San Jose, CA, for appellant.

Michael W. Ahern, Michael C. Fallon, Santa Rosa, CA, for appellee.

Before OLLASON, ASHLAND and MEYERS, Bankruptcy Judges.

## OPINION

OLLASON, Bankruptcy Judge.

This case concerns a preferential transfer of money in the form of a cashier's check. Following trial on stipulated facts, the bankruptcy court determined that a preferential transfer was made to appellant, and awarded judgment of $100,000 for appellee, the Chapter 7 trustee. **WE AFFIRM.**

## FACTS AND PROCEDURE BELOW

Peter Lee and Ken Ota, a general partnership, ("Debtor"), filed a voluntary petition under Chapter 7 [1] of the Bankruptcy Code on December 24, 1992.

The Hall–Mark Corporation ("Hall–Mark") supplied electronic parts to Debtor on a running account basis.

Between September 2 and September 21, 1992, Hall–Mark sold and delivered to Debtor electronic parts in the amount of $462,140.

On September 11, 1992, Debtor delivered check number 2117, (or "the partnership check"), drawn on a partnership account, in the amount of $100,000 to Hall–Mark as payment for goods received. Hall–Mark deposited the partnership check on September 14, 1992.

On September 23, 1992, Hall–Mark received check number 2117 from its bank, marked "Refer to Maker" on the signature block of the check. It was undisputed that

the reason for the return of the check was that it lacked a dual signature.

More than 90 days before the bankruptcy petition was filed, Debtor acquired a replacement check for check number 2117 in the form of a cashier's check. Hall–Mark received the cashier's check in the amount of $100,000 on September 25, 1992. It was undisputed that September 25, 1992 was the ninetieth day before the bankruptcy filing.

Hall–Mark did not ship any more electronic parts to Debtor after September 23, 1992.

Hall–Mark filed an unsecured, nonpriority proof of claim in the amount of $555,220.08 as a result of Debtor's nonpayment for electronic parts sold and delivered.

On October 25, 1993, Appellee, the Chapter 7 Trustee Charles Sims ("Trustee"), filed a complaint to recover the $100,000 as a preferential transfer.

In Hall–Mark's answer, it moved to dismiss the complaint for failure to state a claim upon which relief could be granted, and asserted other defenses.

During a telephonic hearing on March 30, 1993, the parties agreed to hold a trial upon stipulated facts, and to submit additional stipulated facts in supplemental trial briefs, which was done. At the trial, the judge required agreement as to additional facts to keep a clear record.[2] One of the clarifications requested by Mark–Hall was that the trustee's proposed fact—that "the Debtor *purchased* a replacement check ... in the form of a cashier's check"—be changed to its proposed fact—"the Debtor *acquired* a replacement check...." The parties agreed to this change in open court.

During the discussion regarding this fact, Trustee's attorney suggested to the court that a facsimile of the cashier's check be admitted into evidence. The court denied the request unless there was a stipulation to admit the check, since the trial was on stipulated facts. Trustee's attorney rested after Hall–Mark's attorney stated:

---

**1.** Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

**2.** Other facts agreed to at trial included that Debtor was insolvent at all relevant times, and the transfer enabled Hallmark to receive more than it would have in a Chapter 7.

Well, I mean, Your Honor, we stipulate that it is the check, but again, we were trying this on the—on what was presented. And if we're all going to introduce evidence now. . . .

At the conclusion of the admission of the stipulated facts, the bankruptcy court considered Hall–Mark's motion to dismiss on the basis of Hall–Mark's allegations that Trustee had not proven the requisite elements of § 547(b). The court treated Hall–Mark's motion as one under Fed.R.Bankr.P. 7052/ Fed.R.Civ.P. 52(c), and denied the motion.

The bankruptcy court's Findings of Fact and Conclusions of Law were entered on May 16, 1994. The pertinent findings of fact were as follows:

6. Between September 2, 1992 and September 21, 1992, Hall–Mark sold and delivered to the Debtor electronic parts in the amount of $462,140.00.

7. On September 11, 1992, the Debtor paid $100,000 by way of Check Number 2117, drawn on a Partnership account to Hall–Mark as payment for goods received.

8. Hall–Mark deposited Check Number 2117 on September 14, 1992.

9. On September 23, 1992, Hall–Mark received Check Number 2117 from its bank with the label "refer to maker" stamped on the signature block of the check.

10. Check Number 2117 was dishonored for lack of dual signature.

11. More than 90 days before the bankruptcy petition was filed, the Debtor acquired a replacement check for Check Number 2117 in the form of a cashier's check.

12. Hall–Mark received the Cashier's Check in the amount of $100,000.00 on September 25, 1992.

13. The Debtor transferred property of the Debtor when it transferred the Cashier's Check in the amount of $100,000.00 to Hall–Mark on September 25, 1992.

14. The Debtor was insolvent on September 25, 1992, when the Cashier's Check was received by Hall–Mark.

15. Hall–Mark did not ship any more electronic parts to the Debtor after September 23, 1992.

16. Hall–Mark received more than it would have received under a Chapter 7 distribution when it received the Cashier's Check for $100,000.00.

17. On May 11, 1993, Hall–Mark filed an unsecured proof of claim in the amount of $555,220.08 for electronic parts delivered.

The bankruptcy court also made the following conclusions of law:

1. The relevant transfer for determining whether a preferential transfer occurrd [sic] is when Hall–Mark received the $100,-000 Cashier's check [sic] on September 25, 1992.

2. The receipt by Hall–Mark of the Cashier's Check on September 25, 1992 was a preferential transfer under 11 U.S.C. § 547(b).

3. When Check Number 2117 was dishonored, there was no transfer so that when the check was replaced by the Cashier's Check on September 25, 1992, the transfer did not relate back to Hall–Mark's receipt of Check Number 2117.

4. Since Check Number 2117 was dishonored, and there were no new shipments of goods after the Cashier's Check was received by Hall–Mark, there was no new value transferred by Hall–Mark after it received a preferential transfer under 11 U.S.C. 547(c)(4).

5. There was no intended and substantially contemporanious [sic] transfer of new value to the Debtor by Hall–Mark providing a defense under 11 U.S.C. § 547(c)(1). The dishonoring of Check Number 2117 prevented Hall–Mark's reciept [sic] of the Cashier's Check on September 25, 1992 from falling within the 30 day relation period back because there was no evidence of intent for the Cashier's Check to be other than a replacement of the previously dishonored Check Number 2117.

6. The replacement of Check Number 2117 by the Cashier's Check when Check Number 2117 was dishonored also prevented Hall–Mark's reciept [sic] of Cashier's Check from being an ordinary course payment under 11 U.S.C. § 547(C)(2).

The court's order in favor of the trustee was also entered on May 16, 1994. Hall-Mark timely appealed.

## ISSUES

1. Whether the cashier's check was property of Debtor.

2. Whether the transfer of the cashier's check, for purposes of § 547(b) occurred at time of delivery or issuance.

3. Whether the bankruptcy court erred by denying Hall-Mark's motion for judgment in its favor.

4. Whether Hall-Mark was entitled to the "contemporaneous exchange" defense of § 547(c)(1).

5. Whether Hall-Mark was entitled to the "new value" defense of § 547(c)(4).

## STANDARD OF REVIEW

We review the bankruptcy court's conclusions of law *de novo. In re Itule,* 114 B.R. 206, 209 (9th Cir. BAP 1990). The bankruptcy court's interpretation of state law is reviewed *de novo. In re Park at Dash Point, L.P.,* 985 F.2d 1008, 1010 (9th Cir. 1993). The determination of when a transfer occurs for purposes of § 547 is a question of law which we review *de novo. In re Loken,* 175 B.R. 56, 60 (9th Cir. BAP 1994). Mixed questions of law and fact are reviewed *de novo. Boone v. United States,* 944 F.2d 1489, 1492 (9th Cir.1991). Such a question arises when the historical facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule. *Pullman-Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790 n. 19, 72 L.Ed.2d 66 (1982); *Moss v. Comm'r,* 831 F.2d 833, 838 n. 9 (9th Cir.1987).

A trial court's findings of fact can be overturned only if they are clearly erroneous. *In re Siriani,* 967 F.2d 302, 303–04 (9th Cir.1992). A finding is clearly erroneous if, after a review of the record, the appellate court is left with a firm and definite conviction that error has been committed. *In re Burkhart,* 84 B.R. 658, 660 (9th Cir. BAP 1988). The clearly erroneous standard applies to factual inferences drawn from undis-puted facts. *Comm'r. v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 1200, 4 L.Ed.2d 1218 (1960); *In re Bohart,* 743 F.2d 313, 326 (5th Cir.1984).

## DISCUSSION

Section 547 "seeks to equalize the positions of similarly situated creditors by giving trustees in bankruptcy the power to set aside so-called preferential transfers of a debtor's property." *In re Unicom Computer Corp.,* 13 F.3d 321, 324 (9th Cir.1994).

For Trustee to avoid a transfer in this case, six conditions must be met. There must be:

1) a transfer of an interest of the debtor in property

2) to or for the benefit of the creditor

3) for or on account of a debt owed before the debtor made the transfer—[an antecedent debt]

4) made while the debtor was insolvent

5) made on or within 90 days before the date of the filing of the petition, and

6) that enabled the creditor to receive more than it would receive in a Chapter 7 liquidation of the estate.

*In re Kemp Pac. Fisheries, Inc.,* 16 F.3d 313, 315 (9th Cir.1994).

Trustee has the burden of establishing that a transfer was avoidable under § 547(b) by proving all the elements thereunder, *In re Flooring Concepts, Inc.,* 37 B.R. 957, 960 (9th Cir. BAP 1984), by a preponderance of the evidence. *In re Bullion Reserve of North America,* 836 F.2d 1214, 1217 (9th Cir.), *cert. denied sub nom. Bozek v. Danning,* 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988). Hall-Mark has the burden of proving the elements under the exceptions provided in § 547(c). 11 U.S.C. § 547(g).

The parties stipulated to facts proving the existence of elements (2), (4) and (6), above. The remaining elements which the Trustee was required to prove were: 1) the property was property of the debtor; (3) the transfer was on account of an antecedent debt; and (5) the transfer was made within the 90-day period.

## A. Transfer of Property of the Estate

■ The threshold finding in a § 547(b) analysis is that the property transferred was property of the estate. "[A] transfer may be avoided under section 547(b) if it involves property of the debtor and the transfer reduces the amount of the bankruptcy estate available for the payment of other creditors." *Id.*, citing *In re Cal. Trade Tech. Schools, Inc.*, 923 F.2d 641, 645 (9th Cir. 1991). Thus, the "diminution of estate" doctrine has been developed to test whether a debtor controlled transferred property to the extent that he owned it. *Kemp Pac. Fisheries*, 16 F.3d at 316; *see generally* 4 COLLIER ON BANKRUPTCY, § 547.03[2] at 547–22.1—547–31 (15th ed. 1994).

■ A debtor's property consists of all of the debtor's "legal or equitable interests." § 541(a)(1). Property of the debtor is defined broadly. *Bullion Reserve*, 836 F.2d at 1217. A debtor's interest in property includes possession, custody, and control. H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6271. California state law determines whether a certain asset constitutes property of the estate. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).

■ Hall–Mark contends that there was no evidence put before the bankruptcy court that the cashier's check was property of the estate. Basically, it is arguing that the bankruptcy court improperly inferred from the stipulated facts that the cashier's check was property of the estate. It contends that Trustee did not prove that: 1) the funds used to purchase the check were Debtor's; and 2) the funds did not belong to the issuing bank.[3]

### (1) Source of Funds

■ Finding of Fact No. 11 reflected the stipulated fact that "the Debtor *acquired* a replacement check for Check Number 2117 in the form of a cashier's check." (Emphasis added.) Finding of Fact No. 13 stated that "[t]he Debtor *transferred property of the Debtor* when it transferred the Cashier's Check in the amount of $100,000 to Hall–Mark on September 25, 1992." (Emphasis added.)

Hall–Mark's argument concerning the source of the funds was first raised at trial. This new issue had not been briefed by either party. For this reason, the bankruptcy judge stated:

> I'm inclined to agree with [Trustee's counsel], that there was a negotiated set of facts here, and I don't believe it was presented to me that there was a theory of the case that the money that ultimately got to your client wasn't the debtor's at some point in the sequence.

To resolve this issue, the bankruptcy court looked to Hall–Mark's posture throughout the pretrial events. Hall–Mark raised the issue of the cashier's check not being property of the estate in its supplemental trial brief. However, the theory presented there was that a cashier's check was drawn on bank funds, and therefore, the funds were not the partnership's but the bank's. This latter issue concerned the funds *after* the bank issued the cashier's check, but would not apply to the funds used to purchase the check.

The bankruptcy court concluded that "acquired" meant the same thing as "purchased" for purposes of the stipulated fact and did not change the inference from the stipulated

---

3. Hall–Mark did not contend that this was a case of "earmarking." Under the earmarking doctrine, when a third party advances or loans funds to the debtor with instructions to use the funds to pay off another creditor, the funds are said to be earmarked for payment to a specific creditor or creditors and do not become property of debtor. *In re Sierra Steel, Inc.*, 96 B.R. 271, 274 (9th Cir. BAP 1989). Rather, Hall–Mark stated that, hypothetically, the funds could have come from a general partner who is a direct obligor and who bought the cashier's check without contributing

it to the partnership. If Hall–Mark were asserting an earmarking defense, it failed to meet its burden to present evidence on such a theory. *Id.* at 274–75. See also other cases which hold that the earmarking doctrine is a court-made defense to a preference action: *In re Bohlen Enter., Ltd.*, 859 F.2d 561, 564–67 (8th Cir.1988); *Coral Petroleum, Inc. v. Banque Paribas–London*, 797 F.2d 1351, 1356 (5th Cir.1986); *In re Kenosha Liquidation Corp.*, 158 B.R. 774, 777 (Bankr. E.D.Wis.1993); *In re Ludford Fruit Products, Inc.*, 99 B.R. 18, 21 (Bankr.C.D.Cal.1989).

fact that the money used to purchase the cashier's check was Debtor's.[4]

The following relevant portion of the transcript is illustrative:

[TRUSTEE]: But the debtor purchased the cashier's check.

THE COURT: —got it from the bank, whether—

[HALL–MARK]: And we agree to that. I'm not—

TRUSTEE: Well—

[HALL–MARK]: —quarreling with that, but what we're suggesting is, is that— we're not trying to change the facts, your Honor, but the trustee has gone forward with certain proof. The trustee has to prove that they were funds of the debtor.

Thus, Hall–Mark stipulated that Debtor either "purchased" the cashier's check or "got it" from the bank.

"Acquire" means "to come into possession, control or power of disposal of often by some uncertain or unspecified means." *See* WEBSTER'S THIRD INTERNATIONAL DICTIONARY 18 (1981). Acquire is also a synonym for "purchase," which means "to obtain ... by paying money or its equivalent." *Id.* at 1844.

■ The bankruptcy court is allowed to make proper inferences from the stipulated facts, but may not convert inferences into admissions. *In re Benvenuto*, 102 B.R. 9, 11

(Bankr.D.P.R.1989). Hall–Mark agreed that Debtor acquired the cashier's check from the bank and that it possessed the check. The inference is that one who acquires a cashier's check from a bank purchases it. Another inference is that one who purchases a cashier's check from a bank is in possession and control of the funds used to purchase the cashier's check. Hall–Mark also stipulated that the cashier's check was a replacement for the partnership check number 2117. The inference is that the partnership purchased the cashier's check. The bankruptcy court's finding of fact based on these inferences was not clearly erroneous.

If Hall–Mark disputed the inferences made by the bankruptcy court from the stipulated facts, it had the burden to introduce evidence to prove those facts incorrect, but it did not do so. Rather, when Trustee suggested that a facsimile of the cashier's check could be admitted into evidence, Hall–Mark stated: "We stipulate that it is the check." We hold that Hall–Mark is bound by the stipulated fact that Debtor was the purchaser of the cashier's check, and that it had a property interest in the funds used to purchase it.[5] *In re Madera Farms Partnership*, 66 B.R. 100, 102 (9th Cir. BAP 1986).

■ Having this undisputed fact before it, the bankruptcy court was required to apply California law to determine the property

---

4. The relevant portions of the transcript follow:

THE COURT: ... Are you really contending that to say that the debtor acquired the cashier's check means something other than the debtor owned the cashier's check and was the owner of the demand to have the bank pay the money?

[HALL–MARK]: ... if we use owner in the generic sense, as the possessor and the one ... who has the right to direct where that check is going, I do not quibble with that.

... But we say that the debtor acquired it. We don't know if the debtor acquired it by putting its money in to buy the cashier's check; one of the partners put their money in to buy the cashier's check. The schedules show—and the Court could take judicial notice—that 20 some bank accounts of related entities, it could have been another entity that put that money—

THE COURT: But fact nine, as modified, has the debtor having acquired it, right?

[HALL–MARK]: Acquired. They took possession of it. They didn't ...

THE COURT: Well, acquire means one in possession, doesn't it?

[HALL–MARK]: ... our understanding of what we wanted acquire to mean, was to take possession of that check ... we are not stipulating that the debtor's funds were used to buy that check....

THE COURT: But I don't believe it was ever presented to me preliminarily that it was never the debtor's property.... [T]he use of the term purchase versus acquired, to me, doesn't change what was the inference that was drawn and is drawn from the complaint, that is was the debtor's money.... And how the debtor came to have that money is irrelevant in my view....

5. A purchaser under California law can also be a "remitter." A remitter is "a person who purchases an instrument from its issuer if the instrument is payable to an identified person other than the purchaser." Cal.Com.Code § 3103(a)(11) (West 1994). The remitter is the owner of the check until ownership is transferred to the payee by delivery of the cashier's check. *See* Cal.Com.Code § 3201, U.C.C.Comment (West 1994 & Supp.1995).

rights of the purchaser in a cashier's check. We make an independent review of the bankruptcy court's interpretation of state law. *In re Kirkland,* 915 F.2d 1236, 1238 (9th Cir. 1990).

## (2) Transfer of bank's funds or Debtor's property?

Hall–Mark contends that "it is axiomatic that the cashier's check, while possessed by the Debtors, constituted funds of the issuing bank." Its contention is that the transfer of Debtor's property interest took place at the time the cashier's check was issued. Trustee's contrary position on appeal is that, pursuant to California law, the cashier's check remained property of Debtor until it was delivered to the payee.

■■■■ What constitutes a transfer under 11 U.S.C. § 547(b) and when the transfer is complete is a matter of federal law. *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945). In the absence of any controlling federal law, "property" and "interests in property" are creatures of state law. *Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992).

The Bankruptcy Code defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property...." 11 U.S.C. § 101(54). "Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody and control are interests in property." H.R.Rep. No. 595, 95th Cong. 2nd Sess. 314 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6271.

Section 547(e) provides further guidance on the meaning and date of a transfer. Its subsections provide:

(1)(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section ... a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time ...;[6]

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days....

■■■■ A transfer by ordinary check takes place at the time the check is honored.[7] *Barnhill,* 503 U.S. at 398–99, 112 S.Ct. at 1390. This is because:

receipt of the check gives the recipient no right in the funds held by the bank on the drawer's account. Myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored.

*Id.*

■■■■ In contrast to an ordinary check, a cashier's check is a "draft with respect to which the drawer and drawee are the same bank or branches of the same bank." Cal. Com.Code § 3104(g) (West 1994). A "draft" is an order to pay. Cal.Com.Code § 3104(e) (West 1994). The "drawer" is "a person who signs or is identified in a draft as a person ordering payment" and the "drawee" is the person "ordered in a draft to make payment." Cal.Com.Code § 3103(a)(2) and (a)(3) (West 1994).

■■■■ Unlike an ordinary check, a cashier's check is accepted upon issuance.[8] Cal. Com.Code §§ 3409–3413 (West 1994); *Farmers & Merchants State Bank v. Western*

---

**6.** The Bankruptcy Reform Act of 1994 amended this section, effective October 22, 1994, to provide a 20–day perfection period for a transfer involving a purchase money security interest in property received by the debtor. 11 U.S.C. § 547(e)(2)(A) and 11 U.S.C. § 547(c)(3)(B).

**7.** Basically, a note or draft is "honored" if it is paid at the time of presentment to the maker or

drawee, respectively. Cal.Com.Code § 3502 (West 1994).

**8.** The cashier's check is issued at the time of "first delivery ... for the purpose of giving rights on the instrument to any person." Cal.Com. Code § 3105(a) (West 1994 & Supp.1995). Therefore, the cashier's check was issued when Debtor as purchaser took possession of it.

*Bank,* 841 F.2d 1433, 1440 (9th Cir.1987); *Morgan Guar. Trust Co. of N.Y. v. Am. Savings and Loan Ass'n,* 804 F.2d 1487, 1500, n. 12 (9th Cir.1986), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). "Acceptance" is the drawee's signed agreement to pay a draft as presented. Cal. Com.Code § 3409(a) (West 1994). However, acceptance does not operate in law or equity as an assignment of the funds in the hands of the drawee. Cal.Com.Code § 3408 (West 1994); *Barnhill,* 503 U.S. at 398, n. 6, 112 S.Ct. at 1389, n. 6; *Nautilus Leasing Serv., Inc. v. Crocker Nat. Bank,* 147 Cal.App.3d 1023, 195 Cal.Rptr. 478, 481 (1983). A payee's remedy is against the maker. *Id.* California holds the issuer of a cashier's check liable as a maker of a note under its negotiable instrument laws. Cal.Com.Code §§ 3105(c), 3412 (West 1994). A "maker" is the "person who signs or is identified in a note as a person undertaking to pay." Cal. Com.Code § 3103(a)(5). The issuer's obligation "is owed to a person entitled to enforce the instrument or to an indorser who paid the instrument . . .", *e.g.,* a holder. Cal. Com.Code §§ 3301, 3412 (West 1994).

These statutes do not provide that the purchaser's ownership interest in the cashier's check is transferred to the bank at the time the bank issues the cashier's check.

■ It is well-established in California law that the purchaser of a cashier's check retains a property interest in the cashier's check before it is delivered. *In re Richmond Produce Co., Inc.,*[9] 151 B.R. 1012, 1017 (Bankr.N.D.Cal.1993); *Garthwaite v. Bank of Tulare,* 134 Cal. 237, 66 P. 326, 327 (1901); *Burke v. Mission Bay Yacht Sales,* 214 Cal. App.2d 723, 29 Cal.Rptr. 685, 690 (1963). The purchaser's rights "simulate" those of a drawer of an ordinary check: the purchaser pays money to the bank for which the bank issues its check payable, at the purchaser's request, to another. *Id.*

If this were not the case, then if a bank refused to pay a cashier's check at the purchaser's request because, for example, it was mistakenly made out to the wrong payee, the bank would receive a windfall if the purchaser could not recover those funds. *See* Cal. Com.Code §§ 3411, 3418 (if an instrument has been accepted by mistake, the bank may revoke the acceptance).

■ Another example of the purchaser's interest in the cashier's check is that in case of conversion of the check, the law governing conversion of personal property applies, and an action may not be brought by either the issuer or acceptor of the instrument, nor by a payee who did not receive delivery. Cal. Com.Code § 3420(a) (West 1994). See also Cal.Com.Code § 3203 (West 1994), 1992 U.C.C. Comment (the right to enforce the instrument and ownership of the instrument are two different concepts).

Hall–Mark incorrectly focuses on the ownership of the literal funds used to pay the cashier's check rather than the ownership of the cashier's check which represents an order to pay from the bank's funds. In this sense, the cashier's check, like an ordinary check, is utilized as a means of transferring the purchaser's cash to the check's payee. The issuing bank is not a transferee, it is simply a conduit. *In re M. Blackburn Mitchell Inc.,* 164 B.R. 117, 124 (Bankr. N.D.Cal.1994) (construing § 550)); *see also In re Broadview Lumber Co., Inc.,* 168 B.R. 941, 963 (Bankr.W.D.Mo.1994).

The defendant in *Richmond Produce* unsuccessfully raised the argument that it did not receive property of the debtor when it received a cashier's check, because the issuing bank "becomes independently obligated to the payee of the check to honor the check when it is presented." *Richmond Produce,* 151 B.R. at 1016. Cases from other jurisdictions cited by Hall–Mark also support this theory. In *In re Archie Campbell, Inc.,* 45 B.R. 416 (Bankr.D.N.D.1984)[10], the bank-

---

9. Hall–Mark contends that the holding of *Richmond Produce* cannot be applied to this case because *Richmond Produce* involved § 550, not § 547. This argument is without merit because the both cases required a determination under § 541.

10. The district court remanded this case for reconsideration and further findings and conclusions as to whether the transfer of the cashier's check depleted the assets of the debtor's estate. *In re Archie Campbell, Inc.,* 54 B.R. 116, 118 (D.N.D.1985).

ruptcy judge based his conclusion that payment by a cashier's check is a transfer of the issuing bank's funds, on the "uniform definition" of a cashier's check as "an obligation of the bank which issues it and not an item payable from a customer's account." *Id.* at 419. A second case relied upon by Hall–Mark made a similar conclusion based on the analysis that a transfer of the interest in a cashier's check occurs at the time of issuance, since it is then that the drawer/drawee bank becomes totally liable and cannot refuse to pay. *In re Toone,* 140 B.R. 605, 607 (Bankr.D.Mass.1992).

While courts in other jurisdictions have held that a bank should not be permitted to raise any defense to its obligation to pay cashier's checks, that is not the law in California. *Nat. Bank of Cal. v. Miner,* 167 Cal. 532, 140 P. 27, 29 (1914) (Supreme Court rejected the argument that in case of mistake of fact bank's liability became absolute upon execution and delivery of cashier's check); *Tokai Bank of Cal. v. First Pac. Bank,* 186 Cal.App.3d 1664, 231 Cal.Rptr. 503, 504 (1986). Technically, the bank cannot "stop payment" from itself. Nevertheless, it can refuse to pay the cashier's check, *i.e.,* "dishonor" the cashier's check, and can seek to recover payment made via equitable defenses. *See* Cal.Com.Code §§ 3411, 3418 (West 1994); *Farmers & Merchants State Bank,* 841 F.2d at 1438–41.[11] In *Farmers & Merchants State Bank,* the Ninth Circuit examined a bank's right to assert its § 3–418 remedies without being limited by stop-payment provisions of § 4–303, under the Uniform Commercial Code:

> Neither § 4–303 nor its accompanying comments mention cashier's checks or suggest that the section was intended to alter the status of such instruments under pre-Code law. Our research reveals a number of pre-Code cases holding that there are circumstances under which a bank may dishonor a cashier's check issued in ex-

11. In this case, the Ninth Circuit construed the Uniform Commercial Code as adopted by Oregon, but these provisions are essentially the same as California's. California's § 3418 specifically restates the law of mistake and restitution contained in the U.C.C. version. Cal.Com.Code

change for a customer's check presented for payment.

841 F.2d at 1439–40.

The bank can also refuse to pay a cashier's check as an accommodation to its customer. *See* Cal.Com.Code § 3411, 1992 U.C.C. Comment (West 1994). However, a purchaser of the cashier's check has no practical ability to stop payment on it. *See* Cal.Com.Code § 4303 (West 1994) (any stop-payment order expires after the bank accepts the item.)

California law obligates the issuer of a cashier's check as the maker of a note, "obliged to pay the instrument according to its terms at the time it was issued ..." Cal.Com.Code § 3412 West 1994), but at the same time it treats the cashier's check as a "draft." Cal.Com.Code § 3412, 1992 U.C.C. Comment (West 1994). Whether treated as an accepted draft or a promissory note, a cashier's check should not be treated differently from any other instrument subject to the Uniform Commercial Code, notwithstanding the "public perception of cashier's checks as the equivalent of cash." *Farmers & Merchants State Bank,* 841 F.2d at 1440–42. Therefore, acceptance of a cashier's check does not preclude a bank in California from refusing to pay under certain circumstances.

## B. When Did the Transfer Occur?

█ The bankruptcy court concluded that the relevant transfer for determining whether a preferential transfer occurred, pursuant to § 547(b), was when Hall–Mark received the $100,000 cashier's check on September 25, 1992.

This conclusion of law, while following traditional negotiable instrument law, *i.e.,* date of delivery, (Cal.Com.Code § 3203 (West 1994)), is inconsistent with the holding in *Barnhill. Barnhill* held that for purposes of payment by ordinary check, a transfer occurs on the date of honor.

§ 3418, U.C.C. Comment (West 1994). California's version provides that the remedies may not be asserted against "a person who took the instrument in good faith and for value or who in good faith changed position in reliance on the payment or acceptance."

This is because, ... receipt of a check gives the recipient no right in the funds held by the bank on the drawer's account. Myriad events can intervene between delivery and presentment of the check that would result in the check being dishonored. The drawer could choose to close the account. A third party could obtain a lien against the account by garnishment or other proceedings. The bank might mistakenly refuse to honor the check.

....

[FN7] Admittedly, such behavior might create a cause of action for the debtor-drawer, ... but the recipient would not have any claim against the bank.

503 U.S. at 398–99, 112 S.Ct. at 1390, and n. 7.

The Supreme Court held that the date of honor was also consistent with the definition of "transfer" in § 547(e), which provides that a transfer occurs at the time the transfer "takes effect between the transferor and the transferee." The Court reasoned that, since the debtor as drawer retained the ability to stop payment on the ordinary check until the very last, "we do not think that the transfer of funds in this case can be said to have 'taken effect between the debtor and petitioner' until the moment of honor." *Id.* at 401, 112 S.Ct. at 1391.

In contrast to an ordinary check, a payee/holder of a cashier's check has a right to payment from the issuing bank. Cal.Com. Code §§ 3301, 3412 (West 1994). Also, under the California Commercial Code, there is no provision for a customer to place a stop-payment on a cashier's check, (but there is no specific prohibition either).

[T]he reference in § 4–303(1) to a "stop order received by" a bank relates to a customer's effort to stop payment on an item drawn on the customer's account.... It is apparent ... that the section was drafted for the purpose of settling the relative priorities of conflicting claims to a customer's account....

*Farmers & Merchants Bank,* 841 F.2d at 1439–40.

Such a stop-payment order would appear to be futile in the case of a cashier's check, however, according to Cal.Com.Code § 4303(a) (West 1994), which states that

[a]ny knowledge, notice, or stop-payment order received by ... a payor bank comes too late to terminate, suspend, or modify the bank's right or duty to pay an item or to charge its customer's account for the item if the knowledge, notice, stop-payment order ... is received or served and a reasonable time for the bank to act thereon expires ... after the earliest of the following:

(1) the bank accepts or certifies the item....

Since the bank accepts a cashier's check at time of issuance, there would be no practical opportunity for the customer/purchaser to stop payment.

■ Although a purchaser cannot stop payment of the cashier's check, he or she could return the cashier's check or seek to have it cancelled as long as it is in his or her possession. Therefore, until delivery, the purchaser's property rights in the cashier's check are not transferred to the payee/holder.[12] *Richmond Produce,* 151 B.R. at 1017; *Garthwaite,* 66 P. at 327.

Because of these distinctions between an ordinary check and a cashier's check, we hold that the relevant date of transfer of a cashier's check for purposes of § 547(b) is the date of delivery. Since we have already held that the purchaser retains a property interest in the cashier's check until it is delivered, the bankruptcy court's conclusion of law was correct that the relevant transfer for purposes of § 547(b) took place on September 25, 1992, the date Hall–Mark received the cashier's check from Debtor. Because Debtor, as purchaser, retained ownership and

---

**12.** The negotiable instruments provisions are predicated on the rights of a holder, and one cannot be a holder without possession. A holder is defined as a "person in possession if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession." Cal.Com.

Code § 1201(20) (West 1994). Delivery is defined as a voluntary transfer of possession, whereas negotiation is the transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder. Cal. Com.Code § 1201(14), § 3201(a) (West 1994).

possession of the cashier's check until it was received by Hall–Mark, the transfer to Hall–Mark diminished the estate. The finding by the bankruptcy court that Debtor transferred property of the estate when it transferred the cashier's check was correct.

## C. Motion to Dismiss/for Judgment Pursuant to Fed.R.Bankr.P. 7052/ Fed.R.Civ.P. 52(c).[13]

 Trustee was required to prove the elements of § 547 by a preponderance of the evidence. *Bullion Reserve,* 836 F.2d at 1217. The bankruptcy court's granting of a motion pursuant to Fed.R.Bankr.P. 7052/ Fed.R.Civ.P. 52(c) is reviewed for clear error. *Haskell v. Wash. Tp.,* 864 F.2d 1266, 1274 (6th Cir.1988); Fed.R.Civ.P. 52(c), Advisory Committee Note to 1991 Amendments.

 The bankruptcy court properly treated Hall–Mark's motion to dismiss as one under Rule 52(c) because the parties had proceeded to trial upon stipulated facts.

 On appeal, Hall–Mark also contends that the bankruptcy court erred by denying its "motion to dismiss" because Trustee failed "to state a claim upon which relief could be granted." Hall–Mark pled this affirmative defense pursuant to Fed. R.Bankr.P. 7012/Fed.R.Civ.P. 12(b)(6) in its answer.[14] The purpose of a Rule 12(b)(6) motion is to test the formal sufficiency of the statement of a claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir.1987); 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1356 at 294 (1990).

Once the action proceeded to the trial stage, where the evidence was the stipulated facts, the Rule 12(b)(6) motion was no longer appropriate. The bankruptcy court did not abuse its discretion by treating Hall–Mark's motion as one under Rule 52(c).

The stipulated facts before the bankruptcy court and the inferences properly made from those facts were sufficient to support the findings of fact and conclusions of law made by the bankruptcy court. The bankruptcy court did not err by denying Hall–Mark's motion for judgment in its favor.

## D. The § 547(c)(1) defense—"Contemporaneous Exchange"

 Section 547(c)(1) provides as follows:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was

---

13. Fed.R.Civ.P. 52(c), made applicable by Fed. R.Bankr.P. 7052, provides: "If, during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment shall be supported by findings of fact and conclusions of law as required by subdivision (a) of this rule."

Pursuant to a 1991 amendment to the Federal Rules of Bankruptcy Procedure, this section replaced part of Fed.R.Civ.P. 41(b), which formerly authorized a dismissal at the close of the plaintiff's case, in a nonjury trial, if the plaintiff had failed to carry an essential burden of proof.

Although Hall–Mark moved to dismiss the action, a misdesignation of this rule as a "motion to dismiss" rather than for "judgment as a matter of law" is harmless error because it did not alter the nature of the bankruptcy court's evalua-

tion. *Shaw v. Housing Auth. of Lake Providence,* 158 B.R. 400, 402 (W.D.La.1993).

14. Under Rule 12(b)(6), a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Fresher v. Shell Oil Co.,* 846 F.2d 45, 46 (9th Cir.1988).

Dismissal under Rule 12(b)(6) is reviewed *de novo. Barber v. Cincinnati Bengals, Inc.,* 41 F.3d 553, 556 (9th Cir.1994); *In re Russell,* 166 B.R. 901, 904 (9th Cir. BAP 1994).

Furthermore, Hall–Mark had not moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(c), made applicable by Fed.R.Bankr.P. 7012(b). Rule 12(c) allows a bankruptcy court to enter judgment on the pleadings, "after the pleadings are closed but within such time as not to delay the trial." Since the parties had already proceeded to trial, the bankruptcy court did not abuse its discretion by treating Hall–Mark's motion at trial as one under Rule 52(c). *In re Villegas,* 132 B.R. 742, 744 (9th Cir. BAP 1991) (bankruptcy court's decision to utilize Rule 12(c) is reviewed for abuse of discretion).

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

■ Payment by check constitutes a contemporaneous transfer so long as the check is presented and paid within a reasonable time. *Engstrom v. Wiley,* 191 F.2d 684, 686 (9th Cir.1951). One Ninth Circuit case has suggested that a reasonable time for honoring a check under this section is not more than 30 days. *In re Wolf & Vine,* 825 F.2d 197, 201–02 (9th Cir.1987).

Hall–Mark contends that between the time it received the first partnership check and the time it received the replacement cashier's check, only fourteen days elapsed. Therefore, since it supplied electronic parts to Debtor in the interim, it contends that the payment was the result of a contemporaneous exchange and not subject to avoidance.

■ A contemporaneous exchange defense, however, cannot involve a dishonored check. *In re Standard Food Serv., Inc.,* 723 F.2d 820, 821 (11th Cir.1984); *In re Gaildeen Indus., Inc.,* 71 B.R. 759, 764 (9th Cir. BAP 1987). The legislative history of § 547(c)(1) states:

Contrary to language contained in the House report, payment of a debt by means of a check is equivalent to a cash payment *unless the check is dishonored.*

124 Cong.Rec. H11097 (daily ed. Sept. 28, 1978); 124 Cong.Rec. S17414 (daily ed. Oct. 6, 1978).

■ Dishonor changes the nature of the transaction from one intended for a contemporaneous cash exchange to a credit transaction. *Standard Food Serv.,* 723 F.2d at 821; *Gaildeen Indus.,* 71 B.R. at 764. The parties' intention is critical. *In re Wadsworth Bldg. Components, Inc.,* 711 F.2d 122, 124 (9th Cir.1983). Hall–Mark did not give new value for the promise to make the dishonored check good, but intended that the supplies would be shipped in return for the $100,000 partnership check. Thus, dishonor of the partnership check created a credit transac-

tion. It "create[d] an antecedent debt owed by the debtor which any subsequent payments to make good the check, no matter how quickly made, would be satisfying." *In re Barefoot,* 952 F.2d 795, 800 (4th Cir.1991).

■ Hall–Mark contends that "dishonor" only means checks returned for insufficient funds, but not for the situation here, where the partnership check was returned for lack of a signature and stamped "Refer to Maker." We do not agree. Where the bank refuses to pay upon presentment, it has dishonored the check. Cal.Com.Code § 3502 (West 1994); *Fireman's Fund Ins. Co. v. S.E.K. Constr. Co.,* 436 F.2d 1345, 1347 (10th Cir.1971) (although checks marked "Refer to Maker" and not "I.S.F.," they were "dishonored"); *See also In re Keydata Corp.,* 18 B.R. 907, 909 (Bankr.D.Mass.1982).

Hall–Mark began shipping electronic parts on September 2, 1992. In payment for these parts, Debtor provided a partnership check for $100,000 on September 11, 1992. The check was dishonored. Hall–Mark did not supply any more goods after September 23, 1992. The partnership check was never honored. The cashier's check was a replacement for the dishonored partnership check, and was received by Hall–Mark on September 25, 1992. Under these facts, the § 547(c)(1) defense does not apply.

## E. The § 547(c)(4) "New Value" Defense.

■ Section 547(c)(4) provides as follows:

(c) The trustee may not avoid under this section a transfer—

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

■ A defense under this section requires that new value be given *after* the transfer occurs. § 547(c)(4); *Wadsworth Bldg. Components,* 711 F.2d at 123; *In re*

*Ladera Heights Community Hosp., Inc.*, 152 B.R. 964, 967 (Bankr.C.D.Cal.1993).

> The § 547(c) subsections are designed
>
> to encourage creditors to continue to deal with troubled debtors on normal business terms by obviating any worry that a subsequent bankruptcy filing might require the creditor to disgorge as a preference an earlier received payment.

*Barnhill*, 503 U.S. at 402, 112 S.Ct. at 1391; *In re Gold Coast Seed Co.*, 30 B.R. 551, 553 (9th Cir. BAP 1983) (applying this policy goal to § 547(c)(4)). To fulfill the provision's goal, the transfer date, as defined for purposes of the 90–day preference period, involving § 547(b) *and* 547(e), is not necessarily the same time determinator for purposes of § 547(c)(4); a transfer has been defined as occurring under 547(c)(4) at the time the check is received by the creditor. *Id.; Barnhill*, 503 U.S. at 402, 112 S.Ct. at 1391, (a date of delivery rule applies to "specialized purposes" of § 547(c)); *Gold Coast Seed Co.*, 30 B.R. at 553; *In re Kroh Bros. Dev. Co.*, 930 F.2d 648, 650 (8th Cir.1991).

Hall–Mark contends that the pertinent transfer date was September 11, 1992, when the partnership check was received. In other words, the transfer should relate back to September 11, 1992, when the partnership check was delivered, because it was replaced by the cashier's check within a reasonable time. On the other hand, Trustee contends, and the bankruptcy court determined, that the relevant transfer was the date the replacement cashier's check was received, or September 25, 1992. Since Hall–Mark made no shipments after September 23, 1992, Trustee contends that the "new value" defense does not apply.

■ A requirement for the § 547(c)(4) defense is that the creditor must have received a transfer that is otherwise avoidable as a preference. *Kroh Bros. Dev. Co.*, 930 F.2d at 652. However, when a check bounces, the date of delivery of the dishonored check no longer determines the time of transfer. *Barefoot*, 952 F.2d at 798.

Nevertheless, for purposes of § 547(c), the delivery date of the dishonored check may be deemed to be the transfer date if the check is subsequently honored within a reasonable time; the transfer date relates back to the delivery date of the check. *Wadsworth Bldg. Components*, 711 F.2d at 123; *In re Kenitra, Inc.*, 797 F.2d 790, 791 (9th Cir.1986), *cert. denied sub nom. Robert K. Morrow, Inc., v. Agri–Beef Co.*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 980 (1987); *In re Walker Indus. Auctioneers, Inc.*, 45 B.R. 452, 454 (Bankr. D.Or.1984).

■ In the instant case Hall–Mark's partnership check was dishonored *and it was not subsequently honored.* Where the creditor extends credit in reliance upon receipt of payment, it is the parties' necessary intention that *that* check will be honored in a reasonable time. If *that* check is dishonored, the intention to extend new value is no longer relevant as to the first transfer.

The bankruptcy court concluded that when the partnership check was dishonored, "there was no transfer, so that when [the partnership check] was replaced by the Cashier's Check on September 25, 1992, the transfer did not relate back to Hall–Mark's receipt of the partnership check." It further concluded: "Since [the partnership check] was dishonored, and there were no new shipments of goods after the Cashier's Check was received by Hall–Mark, there was no new value transferred by Hall–Mark after it received a preferential transfer under 11 U.S.C. 547(c)(4)."

The transfer, therefore, did not relate back to the original check delivery. The pertinent transfer was the delivery of the subsequent cashier's check, as determined by the bankruptcy court.

Hall–Mark cites the case of *In re Philadelphia Light Supply Co.*, 33 B.R. 734 (Bankr. E.D.Pa.1983), as contrary to the court's holding. That case is distinguishable because the debtor's check was returned by mistake, and when the bank realized its mistake, it wired the money to the creditor. In effect, the check was not dishonored, or the dishonor was revoked. In the instant case, the partnership check was actually dishonored, *i.e.*, not paid by the bank, due to Debtor's lack of dual signature.

Hall–Mark states that the same result as *Philadelphia Light Supply Co.* could have

been achieved in the instant case if Debtor had simply added the missing signature and the same check was redeposited and honored. It asserts a policy argument that the transaction served to encourage business with Debtor, as well as an equitable argument that the bankruptcy court's decision was one of form over substance. However, since the partnership check was dishonored and was not subsequently honored, the fact remains that the cash transaction became a credit transaction, which does not further the goals of § 547(c). Furthermore, to determine that the date of the dishonored check was the transfer date for purposes of § 547(c)(4) in this case "would have the anomalous effect of giving operative legal significance to bad checks." *Barefoot*, 952 F.2d at 798.

The bankruptcy court correctly concluded that the date of transfer was September 25, 1992, when Hall–Mark received the cashier's check. There was no product shipped after the transfer date, and the "new value" defense is inapplicable.

## CONCLUSION

The bankruptcy court did not err by finding that the cashier's check was property of the estate. The bankruptcy court's conclusion of law was correct that the transfer date for purposes of § 547(b) was September 25, 1992, the date the cashier's check was received by Hall–Mark. The bankruptcy court did not err by denying Hall–Mark's motion to dismiss the complaint, pursuant to Fed. R.Bankr.P. 7052/Fed.R.Civ.P. 52(c), and by finding that Trustee met his burden to prove the elements of an avoidable preference. Finally, the bankruptcy court did not err by determining that Hall–Mark was not entitled to the exceptions to avoidance pursuant to § 547(c)(1) and § 547(c)(4). The bankruptcy court's order is AFFIRMED.